UNITED STATES ex rel. NG HEN et al. v. SISSON, Chinese Inspector.

(District Court, S. D. New York. July 20, 1914.)

1. ALIENS ⊚⟞53—DEPORTATION—COUNTRY TO WHICH ALIENS SHOULD BE DEPORTED.

Under Immigration Act Feb. 20, 1907, c. 1134, § 35, 34 Stat. 908 (Comp. St. 1913, § 4284), providing that the deportation of aliens illegally within the United States shall be to the trans-Atlantic and trans-Pacific ports, from which such aliens embarked for the United States, or, if such embarkation was for foreign contiguous territory, to the foreign port at which such aliens embarked for such territory, whether an acquired domicile in Canada or Mexico will prevent deportation of an alien entering the United States therefrom to the European or Asiatic port of original embarkation, nothing short of an actual domicile will do so, and it is for the alien to show such domicile.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊚⟞53.]

2. ALIENS ⊚⟞32—DEPORTATION—SUFFICIENCY OF EVIDENCE.

In a habeas corpus proceeding by a Chinese person ordered deported, evidence *held* to justify a finding that such person, who entered the United States from Canada, came originally from China.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊚⟞32.]

3. ALIENS ⊚⟞32—DEPORTATION—PORT TO WHICH ALIENS SHOULD BE DEPORTED.

Under Immigration Act, § 35, where there is no evidence of the particular port in China from which a Chinese person embarked for the United States, such person may be deported to the port nearest the place where he was born and has his family.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊚⟞32.]

4. ALIENS ⊚⟞54—DEPORTATION—PORT TO WHICH ALIENS SHOULD BE DEPORTED.

The detention of an alien under a warrant of deportation is illegal, unless the warrant provides for deportation to the port required by law.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊚⟞54.]

5. ALIENS ⊚⟞54—DEPORTATION—HABEAS CORPUS—BAIL.

Where a writ of habeas corpus by an alien ordered deported is sustained, and the prisoner discharged, the court may provide for bail to insure his appearance if the ruling be reversed; but where the writ is dismissed, the prisoner's right to bail depends entirely upon the rules regulating his custody where he already is, as a writ of habeas corpus does not put the relator into the custody of the court, or disturb the custody of the person then detaining the relator, and the court has no power to enlarge the relator while the inquiry proceeds or after the writ has been dismissed.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⊚⟞54.]

⊚⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Habeas corpus by the United States, on relation of Ng Hen and others, against Harry R. Sisson, Chinese Inspector in charge for the District of New York and New Jersey. Writ dismissed, and relators remanded.

John N. Boyle, of New York City, for relators.
H. Snowden Marshall, U. S. Atty., and Harold A. Content, Asst. U. S. Atty., both of New York City, for respondent.

LEARNED HAND, District Judge. These cases stand separately, as the record in each is different. The first case in order is Ng Hen, who upon his first hearing was most frank and candid. He was born in China, of a Chinese mother who had never been out of China.

He embarked from Hong Kong with the intention of coming to the United States as soon as possible. There can be no doubt that he is within section 35 and must be deported.

[1] The next case is Ng Yee Chung, who admits that he was born in China and has a family there. The testimony of Ng Hen justifies the conclusion that Ng Yee Chung's statement is false in which he says that he had at no time left the United States after landing in San Francisco five years ago, and further justifies the conclusion that he was one of the three whom Ng Hen and Ng Kai met in the barn in Canada just before crossing the St. Lawrence. There is, however, no evidence to show when he entered Canada, nor from where. He may have embarked for the United States direct, and gone to Canada, and then decided to come back, or he may have embarked from China for Canada, and then come into the United States for the first time. In the first case he is directly within the decision in Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967. In the second case the point is raised whether, to bring the case within section 35 it must not appear that when the alien embarked for foreign contiguous territory he expected to enter the United States.

Literally there is no such requirement. The question is whether the words must be so understood by intendment. I do not think it necessary to decide whether an alien, shown to have been actually domiciled in Canada or Mexico, and found illegally in the United States, comes within section 35. Ng Yee Chung, being an alien, his domicile of origin will endure till a new one has been shown to arise. I am willing to go so far in construing section 35 as to hold that at least nothing short of a domicile in Canada or Mexico will prevent deportation to the European or Asiatic port of original embarkation, and that this is for the alien to show. Whether an acquired domicile will change the result is not presented.

Wong Suey's case is like Ng Hen, except that his testimony somewhat conflicts with Ng Hen's. His admission that he meant from the outset to come to the United States brings him unconditionally within section 35.

[2] Ng Kai's case is quite different from the others, and without the use of Ng Hen's testimony presents the same state of facts as was before the Circuit Court of Appeals in United States ex rel. Moore v.

Sisson, 206 Fed. 450, 124 C. C. A. 356. The whole of Ng Kai's story was a silly fabrication, to believe which would rightly enough earn its author's contempt. The fact that it is all obviously false does not supply any evidence. All that can be gathered from Ng Kai's story is that he is a Chinaman who is telling a false story about how he came here. While we may make some inferences from his motive, they hardly justify a specific conclusion as to where he was born and where he came from. Ng Hen, however, says that Ng Kai came with him from Regina and entered with him. This justifies the deportation, just as in the case of Ng Yee Chung, but does not determine that China was the country whence he came. But Ng Hen also says that Ng Kai came before he (Ng Hen) came from Hong Kong, and this, in the absence of contradiction and in the light of Ng Kai's own perjury, is enough to justify a finding that he came from China. Hence his case is like Ng Yee Chung.

Hop Yet's case is like Ng Kai's, in that he certainly enough made up a false tale; but in it he admitted that he had been born and married in China. Ng Hen's story justifies the conclusion that he was one of the five who crossed the river, and the rule I have accepted in Ng Yee Chung's case justifies his deportation to China.

[3] Therefore the writ will be dismissed as to all five relators. A question is raised, in that the warrant of deportation mentions no port; the statute requiring that the deportation should be to the port of embarkation. In the case of Ng Hen, Wong Suey, and Ng Kai this port is Hong Kong, and the warrant should so read. In the case of Ng Yee Chung and Hop Yet we have no evidence of the port of embarkation. The problem is a practical one, and had best be solved by deporting them to whatever port is nearest to the place where each was born and has his family. The warrant will therefore be amended to conform to these directions, if the relators so wish it, and, when amended, the writ will be dismissed, and the relators remanded.

[4] It may well be questioned whether this court has the power to change the warrant as I have directed. The point was especially reserved in Lewis v. Frick, supra, whether habeas corpus searched more than the legality of the relator's detention and included the purposes of the executive officers. If, however, as was decided in United States ex rel. Moore v. Sisson, supra, the detention is illegal, unless the plan, of which it is a part, will in the end land the relator where the law requires him to go, it is as illegal if it seeks to convey him to Tien Tsin or Shanghai or Port Arthur, if he should go to Hong Kong, as though it sought to send him to any port in China, when he should go to Canada. It therefore appears to me that, under the rule in United States ex rel. Moore v. Sisson, supra, this court must hold the detention illegal, unless it be upon a warrant in which the terminus ad quem is that required by law.

[5] A question has also been raised of bail pending an appeal. This matter has been the subject of a confusion which it seems to me the subject does not justify. A writ of habeas corpus does not put the relator into the custody of this court. It does not assume to disturb the custody of the person then detaining the relator. It requires his

production and examines the legality of the custody. This court has no proper power to enlarge the relator while the inquiry proceeds, and less power to do so after the writ has been dismissed. If the writ be sustained, and the prisoner discharged, then the court might provide for bail to insure his appearance if the ruling were reversed, but only in that case. Till the writ be sustained, the question of bail depends entirely upon the rules regulating the relator's custody where he already is.