UNITED STATES ex rel. HOM CHUNG et al. v. SISSON, Chinese Inspector.

(District Court, S. D. New York. February 2, 1915.)

1. ALIENS ⬤⟞32—DEPORTATION—COUNTRY TO WHICH ALIENS SHOULD BE DEPORTED.

Under Immigration Act Feb. 20, 1907, c. 1134, § 35, 34 Stat. 908 (Comp. St. 1913, § 4284), nothing short of a domicile in Canada or Mexico will prevent the deportation of an alien entering the United States therefrom to the European or Asiatic port of original embarkation, and it is for the alien to show such domicile.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⟞32.]

2. ALIENS ⬤⟞32—DEPORTATION—COUNTRY TO WHICH ALIENS SHOULD BE DEPORTED.

Chinese persons, ordered deported to China, must show from what country, other than China, they came to the United States, if they wish to be deported to some other country.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⟞32.]

3. ALIENS ⬤⟞32—DEPORTATION—PORT TO WHICH ALIENS SHOULD BE DEPORTED.

The port to which a Chinese person should be deported is a practical matter for the immigration authorities to determine, and if the port to which such a person is ordered deported is not the one from which he sailed, he must show what that port was.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤⟞32.]

Habeas corpus to inquire into detention of certain Chinese persons.

Robert M. Moore, of New York City, for relators.

H. Snowden Marshall, U. S. Atty., and Harold A. Content, Asst. U. S. Atty., both of New York City, for respondent.

LACOMBE, Circuit Judge. The evidence indicates that these three, with others, surreptitiously entered the United States from Canada. They were found in Jersey City, locked in a box car of the Erie Railroad. They claimed to have been born in the United States, but failed to prove their averments, and were ordered deported. The only question is whether the government can send them to China, or only to Canada.

[1] I concur with Judge Hand's ruling in the case of Ng Hen, 220 Fed. 538. He says:

"I am willing to go so far in construing section 35 as to hold that at least nothing short of a domicile in Canada or Mexico will prevent deportation to the European or Asiatic port of original embarkation, and that this is for the alien to show. Whether an acquired domicile will change the result is not presented."

[2] It is understood that Canada refuses to receive Chinese persons. A construction of the act which would make it impossible for the United States to send them to China or any other place, unless it could show the particular port from which they sailed, does not commend itself to me. If they wish to be sent to some place other than China, it is for them to show from what country, other than China, they came.

Hom Ech testified that neither his father nor mother ever told him where he was born, and he does not know whether his mother was ever out of China. Hom Chung testified that when he was about 19 years old he was living in a village in China; that he came from China about 2 years ago; that his blood mother was never out of China. Hom Jung testified that he went home to China with his father and mother when he was 2 or 3 years old; that he remained there 16 or 17 years; and that he left China a little over 4 years ago.

[3] As to the question to what port they shall be sent, that is a practical matter for the immigration authorities to determine. If it is contended by any of the relators that the port is not the one from which he sailed, it will be for him to show what that port was. The intent of the statute is too clear to allow it to be defeated by relators leaving uncertain what it is in their power to make certain.

Writs dismissed.