UNITED STATES ex rel. DI BATTISTA v. HUGHES, Immigration Com'r, et al.

(Circuit Court of Appeals, Third Circuit. May 12, 1924.)

No. 3106.

1. Aliens ⊕⇒54—Constitutional law ⊕⇒318—Deportation hearing before immigration inspector due process, though not in accordance with rules of evidence.

Deportation hearing before immigration inspector, to constitute due process of law, need not be in accordance with rules of evidence; compliance with procedure prescribed by rules of department being sufficient.

2. Aliens ⊕⇒54—Warrant of deportation invalid, in absence of evidence supporting charge of unlawful entry.

Warrant of deportation is invalid, unless there is evidence to support charge of unlawful entry.

3. Aliens ⊕⇒54—Proof that wrong decision was rendered in deportation proceeding does not establish denial of fair hearing.

Mere proof that decision rendered in deportation proceeding was wrong does not establish denial of fair hearing.

4. Aliens ⊕⇒54—Evidence held to warrant order of deportation.

Alien's written statement to immigration inspector that he had been smuggled into the United States, and alien's testimony in deportation proceeding that statement was true in every respect, *held* to support order of deportation.

5. Aliens ⊕⇒54—Written statement by alien to immigration inspector held sufficiently identified in deportation proceedings.

Where alien in deportation proceedings admitted truth of written confession to immigration inspector, and offered no contradictory evidence or defense to charges, the statement was sufficiently identified for consideration as evidence.

6. Aliens ⊕⇒54—Deportation of native of Italy to Italy, instead of Mexico, from which he entered United States, held valid.

Where native of Italy had remained in Mexico for only a month, a part of which was consumed in transit to the United States, and there was no evidence in deportation proceedings that Mexico was country of his domicile, or that he ever claimed it as his domicile, warrants of deportation to Italy *held* valid, under Immigration Act Feb. 5, 1917, § 20 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼k), notwithstanding his desire to be sent to Mexico.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Habeas corpus proceeding by the United States on the relation of Consiglio Di Battista, against James L. Hughes, Commissioner of Immigration, and another. From order dismissing the petition, petitioner appeals. Affirmed.

Adrian Bonnelly, of Philadelphia, Pa., for appellant.

George W. Coles, U. S. Atty., and Francis B. Biddle, ·Asst. U. S. Atty., both of Philadelphia, Pa., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and GIBSON, District Judge.

WOOLLEY, Circuit Judge.   Di Battista, an alien, made a statement before Immigration Inspector Perkins of the Immigration Service at El Paso, Texas, to the effect that he is a native of Italy, that he embarked from France for Vera Cruz, Mexico, and thence was smuggled into the United States by ·Mexicans whom he paid for the service. On this information the Secretary of Labor issued a warrant for his arrest.   He was taken into custody and given a hearing before Immigration Inspector Dixon upon charges (1) that he had entered the United States in violation of the last proviso of section 23 of the Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼mm); (2) that the quota allotted under the Act of May 19, 1921, as amended by Public Resolution 55 (Comp. St. Ann. Supp. 1923, § 4289½ et seq.), to the country of which he is a native had been exhausted for the year ending June 30, 1923; (3) that the alien is a person likely to become a public charge at the time of his entry; and (4) that he entered by landing at a place other than a designated port of entry for aliens. Before the hearing he was advised of the nature of the proceeding and was told that he was entitled to be represented by counsel.   On being asked whether he wished to avail himself of this right, he replied, "No," and on being asked whether he was ready and willing to proceed with the hearing without counsel, he replied, "Yes."   Thereupon the hearing began.   The pertinent parts of his testimony are as follows:

"Q. How much money did you have on your person at the time of your arrest?

"A. About two dollars.

"Q. Have you any money saved?

"A. No.

\* \* \* \* \* \* \* \* \* \*

"Q. There is now exhibited to you the evidence upon which the warrant of arrest in your case was issued, consisting of your statement made before Immigrant Inspector C. A. Perkins, in the office of the Inspector in charge, at El Paso, Texas, on June 6, 1923, marked Exhibit A, which statement is written in the English language and will be read and interpreted to you if you so desire.  Do you wish to have your statement read and interpreted to you?

"A. No.

"Q. Are all the statements made by you on June 6, 1923, before Immigrant Inspector C. A. Perkins true in every respect?

"A. Yes.

\* \* \* \* \* \* \* \* \* \*

"Q. Have you any other statement to make in your own behalf to show cause why you should not be deported in conformity with the law?

"A. All I have to say is that I would like to be permitted to go to some place where I could obtain work, for instance, Canada.  There is no work to be had in Italy nor in Mexico."

The record of the hearing was then forwarded to the Secretary of Labor, who finding the alien guilty on all charges, issued a warrant of

deportation. He was placed on board a steamship which, outward bound, touched at Philadelphia. While in that port the alien presented a petition for a writ of habeas corpus to a judge of the District Court of the United States for the Eastern District of Pennsylvania. The judge dismissed the petition and the alien took this appeal on the ground that he had not been accorded a full and fair hearing before Inspector Dixon, in that the statement introduced at that hearing to prove his confession that he had been smuggled into the United States was not identified as the statement he had made before Inspector Perkins, and that, in consequence, there was no valid evidence to support the order of deportation which followed. (He is silent with reference to the testimony on which was based the finding that he was a person likely · to become a public charge at the time of his entry.)

[1-3] The alien takes the position that the full and fair hearing, to which admittedly he is entitled, is in every sense a trial in which rules of evidence, applicable at trials, must be invoked to assure him due process of law. This is not our understanding. A hearing of this kind is before an administrative tribunal, not before a court. The procedure is prescribed by rules of a department of the government charged with the enforcement of certain of its laws. Where, in such a hearing, there is nothing to support a charge of unlawful entry, the department, of course, cannot make a finding against the alien and issue thereon a valid warrant of deportation, for that would be a clear abuse of power. But a denial of a fair hearing is not established by proving merely that the decision was wrong. Chin Yow v. United States, 208 U. S. 813, 28 Sup. Ct. 201, 52 L. Ed. 369. "This is equally true whether the error consists in deciding wrongly that evidence introduced constituted legal evidence of the fact or in drawing a wrong inference from the evidence. * * * [In circumstances like these] mere error, even if it consists in finding an essential fact without adequate supporting evidence, is not a denial of due process of law." United States ex rel. Tisi v. Tod, 44 Sup. Ct. 260, 68 L. Ed. ——. And so, where a fair though summary hearing has been given, "in ascertaining whether · there is or is not any proof tending to sustain a charge involved in a case like this, it is not open to courts to consider either admissibility or weight of proof according to the ordinary rules of evidence (Lee Lung v. Patterson, 186 U. S. 176, 22 Sup. Ct. 795, 46 L. Ed. 1108), even if it believe the proof was insufficient and the conclusion wrong. The question is whether anything was offered that tends, though slightly, to sustain the charge. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040." Frick v. Lewis, 195 Fed. 693, 696, 115 C. C. A. 493, 496; Ex parte Suzanna (D. C.) 295 Fed. 713, 714.

[4, 5] This being the law, the question on this appeal is whether the hearing in issue was such as the law prescribes. The statement which the alien made to the first inspector was a clear confession that he had been smuggled into the United States and therefore had entered in violation of the immigration laws. This confession, stenographically reported and reduced to writing, was shown him at the hearing. He did not wish it interpreted and freely admitted that it was "true in every respect." He offered no evidence in contradiction, nor otherwise

availed himself of the opportunity to make defense to any of the charges. In these circumstances and in view of the character of the hearing, we cannot say that the statement was not identified and, accordingly, cannot hold that the order of deportation was made without evidence to support it.

[6] The warrant of deportation directed that the alien be deported to Italy on the theory that that was "the country whence (he) came," under authority of section 20 of the Immigration Act of February 5, 1917 (39 Stat. 890 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼k]), which provides:

"That the deportation of aliens * * * shall, at the option of the Secretary of Labor, be to the country whence they came or to the foreign port at which such aliens embarked for the United States. * * * *"

The relator complains of this feature of the warrant because he desires to be sent to Mexico, the country from which he was smuggled into the United States, instead of to Italy, the country of which he is a native and from which he proceeded to embark. Warrants of deportation commanding deportation to the country of the alien's nativity have not always been sustained. Ex parte Guest (D. C.) 287 Fed. 884; Ex parte Gytl (D. C.) 210 Fed. 918. Some courts have regarded the country of the alien's domicile and not the country of his nativity as the country whence he came. Others have held that deportation to the country whence he came means the place of his nativity or citizenship and not the country from which he may have entered the United States. Frick v. Lewis, 195 Fed. 693, 701, 115 C. C. A. 493; United States v. Sisson (D. C.) 220 Fed. 538, 539; Id. (D. C.) 220 Fed. 541. These courts hold in effect that the alien's domicile of origin will endure until a new one has been shown to arise and that nothing short of a domicile in a country other than that of his nativity will prevent his deportation to his native country, and that this is for the alien to prove.

We are not called upon to construe this statute because there is nothing in the evidence which shows that Mexico was the country of the alien's domicile or that he ever claimed it as his domicile. He went there, he said, to get work and his stay there was limited to about a month, a part of which was consumed in transit to the border. The warrant of deportation is therefore valid.

The order dismissing the petition is affirmed.