### UNITED STATES ex rel. MASTORAS v. Mc-CANDLESS, Commissioner of Immigration.

### No. 4529.

Circuit Court of Appeals, Third Circuit.

Sept. 30, 1932.

Adrian Bonnelly, of Philadelphia, Pa., and Samuel P. Orlando, of Camden, N. J., for appellant.

Phillip Forman, U. S. Atty., of Trenton, N. J., and Isador Worth, Asst. U. S. Atty., of Riverside, N. J., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal by George Mastoras, the relator, from a decree of the United States District Court for the District of New Jersey upon habeas corpus proceedings. The decree remanded the relator to the custody of the Commissioner of Immigration for deportation. The relator was born in and emigrated from that part of Greece which has since become Italian territory and is now part of Albania. He was regularly admitted for per-manent residence at the port of New York on February 13, 1917, and has resided continuously in the United States from that time. He married a native-born citizen of the United States. One child was born of the marriage. In August, 1927, the relator and his wife were arrested upon a charge of conducting a bawdyhouse. The wife pleaded guilty, was sentenced, and served a term in prison. The relator was acquitted by direction of the court. On January 28, 1928, he was arrested on the charge that he had been found in the United States in violation of the Immigration Act of February 5, 1917, § 19 (8 USCA § 155) in that he had been found connected with the management of and managing a house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes. A number of hearings were held in Bethlehem, Pa., and in Gloucester, N. J., by the immigration authorities and, as a result of the evidence presented, immigration inspectors forwarded the record to the Department of Labor at Washington with a recommendation that a warrant of deportation issue. The Board of Review, after argument, made a similar recommendation, and on September 13, 1929, the Secretary of Labor directed the deportation of the relator to "Albania, the country whence he came." The relator was apprehended February 17, 1930, for purposes of deportation. Upon petition of the relator, a writ of habeas corpus was issued by the District Judge. After hearing, the writ was dismissed.

The relator contends that he did not receive a full and fair hearing within the meaning of the law, and that the warrant of deportation was issued without any substantial legal evidence to sustain it.

Numerous reasons are assigned to sustain the contention that the relator was deprived of a full and fair hearing. Much emphasis is placed upon the fact that Joseph Kennedy, a witness for the government, was actuated by personal malice toward him. There seems to be ample evidence to justify a finding that Joseph Kennedy did have such personal animosity. We do not, however, find any reflection in the record of an unfair attitude on the part of the immigration inspectors toward the relator. Their findings and those of the Board of Review were based on testimony of witnesses other than Joseph Kennedy. Since there was sufficient testimony by witnesses as to whom no bias was shown, the fact that Joseph Kennedy was prejudiced is immaterial.

The relator objects to the presence of Jo-

seph Kennedy before the Board of Review in Washington, and the inference is urged that the witness controlled and determined the hearings before the immigration inspectors, and influenced the review of the case by the board. Not only is there no record of anything which may have been said by Joseph Kennedy before the Board of Review, but the memorandum of the board, in which the evidence was discussed, shows conclusively that he was completely ignored, and that no weight was given to his testimony.

■ Some of the other allegations of unfairness may be disposed of with a few comments. The fact that the inspectors chose to conduct the hearings at Bethlehem, Pa., rather than at the immigration station at Gloucester City, N. J., as requested by counsel for the relator, does not show an abuse of discretion. There was no fund available for transportation expenses of witnesses called to testify in deportation cases. All of the witnesses, as well as the relator, resided in or near Bethlehem. We find no abuse of discretion nor unfairness to the relator in the choice of a place for hearing easily accessible to the witnesses and the relator. In United States ex rel. Ciccerelli v. Curran (C. C. A.) 12 F.(2d) 394, it was held that a hearing was not unfair because it was conducted in a state prison to which the alien had been sentenced. The hearing of the case in Bethlehem did not, in our judgment, affect the relator's case.

■ The relator contends that he has been deprived of a fair hearing because the record is encumbered by a great mass of incompetent and irrelevant testimony, such as newspaper clippings, letters written by Joseph Kennedy, and photographs of counsel. It may be noted that they are not part of the record of the hearing. Moreover, the inclusion of irrelevant material in the record does not render a hearing unfair where there is ample evidence of legitimate character to support the finding. Tang Tun v. Edsell, 223 U. S. 673, 32 S. Ct. 359, 56 L. Ed. 606.

■ The relator complains that the testimony of his witnesses was entirely ignored by the inspectors, and that undue weight was given to the testimony of the government's witnesses, especially to that of Joseph Kennedy. In deportation proceedings, it is within the exclusive jurisdiction of the Department of Labor to determine the weight of the evidence. After this determination has been made, the result is not reviewable by the courts. It is not open to the courts to consider either the admissibility of the evidence or the weight of the proof. The question is whether any relevant testimony was offered that tended to sustain the charge. United States ex rel. Di Battista v. Hughes (C. C. A.) 299 F. 99.

The statement contained in relator's brief that the immigration inspectors failed to make a thorough investigation of the case and relied solely on the testimony of the private prosecutor, Joseph Kennedy, is contradicted by the fact that the case was not determined finally until there had been five hearings in all, and until a voluminous record comprising 180 pages of typewritten testimony had been carefully examined and analyzed.

■■ The relator's contention that the testimony of the government's witnesses fails to fix any particular date when the alien was connected with the management of the bawdyhouse is negatived by the fact that Michael F. Stephen, a health officer of Bethlehem, and John Kennedy, a police officer, testified that in August of 1927, when the raid was made, the alien resided in that house. The time is therefore sufficiently specified to enable the relator to answer the charge of managing and assisting in managing a house of ill repute. Deportation proceedings are not subject to the same strictness of pleading and proof as criminal proceedings.

We do not uphold the relator's contention that the review of the record by the Board of Review was superficial.

We are not convinced that the relator has any substantial basis for his charge that he was not accorded a fair hearing.

■■ If there was any evidence to sustain the warrant of deportation issued by the Secretary of Labor, the writ of habeas corpus was properly discharged. The question therefore is whether there was sufficient substance in the testimony of John Kennedy and Michael F. Stephen to establish the facts charged by the immigration authorities. There was substantial proof, in addition to the admission by the relator's wife, that the place raided was a house of prostitution. John Kennedy testified to conversations which he held with the relator, in which the latter referred to the disorderly house as his home. He saw the relator partially disrobed at the house in question in the early mornings. The relator kept his car in the garage, which was about seventy-five feet from the house. He also testified that the relator had offered him money to secure protection against police raids. Michael F. Stephen testified as to the

character of the house and to the fact that the relator lived there. He made a health raid on the premises and, at that time, saw the relator in the house partially disrobed. Stephen also testified that the relator had been connected with another house of similar reputation. Upon the record there is sufficient substantial evidence on which the Secretary of Labor could base a finding that the relator was connected with the management of a house of prostitution. The courts will not consider the weight of the evidence. United States ex rel. Di Battista v. Hughes, supra; United States ex rel. Tisi v. Tod, 264 U. S. 131, 44 S. Ct. 260, 68 L. Ed. 590. In the latter case, the alien was ordered deported on the ground that he knowingly had in his possession, for the purpose of circulation, printed matter advocating the overthrow by force of the government of the United States. The alien's contention was that he was unable to read English and had no knowledge of the contents of the pamphlets. The court said:

"Tisi's claim to be discharged on habeas corpus rests wholly upon the contention that he has been denied due process of law. There was confessedly due notice of the charge and ample opportunity to be heard. What Tisi urges is that there was no evidence to sustain the finding that he knew the seditious character of the printed matter. Such knowledge is not, like alienage, a jurisdictional fact. Ng Fung Ho v. White, 259 U. S. 276, 284, 42 S. Ct. 492, 66 L. Ed. 938; United States ex rel. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221. But it is an essential of the authority to deport. There is no suggestion that the Secretary of Labor failed to recognize this requirement. The contention is that he erred in deciding that there was substantial evidence of such knowledge and in allowing the supposed evidence to convince him of the fact. The printed matter found consisted of leaflets in the English language. Tisi testified that he cannot read English, that he did not know the character of the leaflets, and that his presence in the company of other Italians who were seen folding the leaflets was accidental. The Secretary of Labor was not obliged to believe this testimony. The government did not introduce any direct evidence to the contrary. But there was much evidence of other facts from which Ti-

si's knowledge of the character of the leaflets might reasonably have been inferred. We do not discuss the evidence, because the correctness of the judgment of the lower court is not to be determined by inquiring whether the conclusion drawn by the Secretary of Labor from the evidence was correct, or by deciding whether the evidence was such that, if introduced in a court of law, it would be held legally sufficient to prove the fact found.

" * * * He was given ample time in which to present the evidence, the argument, and a brief. Under these circumstances, mere error, even if it consists in finding an essential fact without adequate supporting evidence, is not a denial of due process of law."

All the essential facts in the instant case were proved by adequate evidence.

█ The fact that the relator was previously acquitted of the charge under which the deportation warrant was issued is immaterial. It does not constitute res adjudicata in a deportation proceeding. Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967.

█ Finally, it is contended for the relator that he cannot be deported to Albania, which was within the Kingdom of Greece and was the place from whence he came, because Albania is now a separate kingdom. While the deportation to Albania is assigned as error, that question is not discussed in the relator's brief and may be assumed to be abandoned. In the provision of the Immigration Act, § 20 (8 USCA § 156), for the deportation of aliens to the country whence they came, "country" means the state which, at the time of deportation, includes the place from which an alien came. United States ex rel. Mensevich v. Tod, 264 U. S. 134, 44 S. Ct. 282, 68 L. Ed. 591.

The learned judge of the court below patiently and industriously considered the evidence produced before the immigration inspectors, and properly applied the law.

Finding no error in the proceedings of the Department of Labor or of the court below, the decree denying the petition for writ of habeas corpus and remanding the relator for deportation is affirmed.