**ANNELLO ex rel. ANNELLO v. WARD, Commissioner.**

**No. 5213.**

District Court, D. Massachusetts.

Nov. 6, 1934.

John W. Schenck and John W. Walsh, both of Boston, Mass., for petitioner.

Francis J. W. Ford, U. S. Atty., and Arthur J. B. Cartier, Asst. U. S. Atty., both of Boston, Mass., for respondent.

BREWSTER, District Judge.

This proceeding upon writ of habeas corpus was heard upon the files of the Immigration Department, the parties consenting thereto.

The alien is held upon a deportation warrant as one who, within five years after entry, committed a crime involving moral turpitude, for which he was sentenced to imprisonment for a term of one year or more. The alien was found guilty of the crime of larceny and was sentenced on June 20, 1931. The only question arising in this case is whether the alien entered the United States within five years prior to the conviction and sentence.

The record discloses that the alien came to this country with his parents when he was

798

about five years of age; that he had resided with them in Michigan and Massachusetts until some time in 1928 or 1929, when he went to Detroit, where he remained until the latter part of 1930, then returning to Massachusetts. In going to and from Detroit he went by automobile and, in driving between Buffalo and Detroit, passed through Canadian territory.

In 1930, he drove with his uncle to Windsor, on the Canadian side of the Detroit river, in order that he (the uncle) might see one of the men with whom he worked. They were there about 25 minutes when they returned to Detroit. On his return the alien was stopped at the border, but, upon showing his automobile license and birth certificate, he was allowed to enter without objection.

The decision of the immigration authorities seems to be based not only upon this trip with the uncle into Canada, but also on the fact that he crossed Canadian territory in driving from Boston to Detroit and back. As to the latter ground, obviously the Department disregarded the express provisions of the Immigration Act of 1924 (Act May 26, 1924, c. 190, § 3, 8 USCA § 203 (4), which defines an "immigrant" to be one who departs from a place outside of the United States destined for the United States except "(4) an alien lawfully admitted to the United States who later goes in transit from one part of the United States to another through foreign contiguous territory."

▋ The alien, having been lawfully admitted, was not subject to deportation unless his practically uninterrupted journey from Detroit to Windsor and back constituted an entry within the meaning of the immigration laws. Admittedly, the last entry rather than the original entry is to be considered in computing the time within which the crime must have been committed. United States ex rel. Volpe v. Smith, 289 U. S. 422, 53 S. Ct. 665, 77 L. Ed. 1298; United States ex rel. Claussen v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758; United States ex rel. Stapf v. Corsi, 287 U. S. 129, 53 S. Ct. 40, 77 L. Ed. 215; Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967.

In the latter case, while it does not appear how long the alien stayed in Canada, it was said (page 297 of 233 U. S., 34 S. Ct. 488, 491) that the departure from the United States even for a brief space of time subjects the alien to the operation of the immigration laws relating to exclusion and deportation of aliens regardless of previous residence or domicile in this country.

▋ In my opinion it is carrying the application of the doctrine of the above cases too far to regard as an immigrant one who is lawfully within the country and who goes into foreign contiguous territory during the course of a practically continuous journey originating and ending at the same place within the United States. He does not, in my opinion, come within the statute, which defines an "immigrant" as an alien departing from any place outside of the United States destined for the United States; and it is equally absurd to hold that this alien's status has been affected by the fact that he remained in Windsor some 25 minutes while his uncle transacted his business.

It is said in United States ex rel. Claussen v. Day, supra: "The word 'entry' by its own force implies a coming from outside. The context shows that in order that there be an entry within the meaning of the act there must be an arrival from some foreign port or place." In the opinion, no distinction is made between the return to the same or another port in the United States. In order to uphold the decision of the immigration authorities, it is necessary to hold either that the alien became an immigrant because he did not come from one place in the United States to another, or because his journey was interrupted by the 25-minute stay in Canada. In my opinion, such a strict, literal interpretation of the statute leads to results both absurd and unjust. For example: It would not seem reasonable to class one crossing Canada from Detroit to Buffalo, by automobile, as an immigrant merely because, while going in transit from one part of the United States to another, he stopped to take on a supply of gasoline. But, conceding that the alien does not come within the exceptions noted above, it is still necessary, in order to establish an entry within five years prior to the conviction, to show that the alien came within the statutory definition of an "immigrant" when he returned from his trip to Windsor. As above indicated, this is not shown.

For that reason I have reached the conclusion that the immigration authorities have proceeded upon a misconception of the law applicable to the undisputed facts of the case.

Zurbrick v. Borg (C. C. A.) 47 F.(2d) 690, cited by government, is a case dealing with an alien who had never been lawfully admitted. So far as that decision is out of harmony with my conclusions, I find myself unable to follow it.

The writ may be sustained and the alien discharged. If the respondent desires to appeal, the discharge shall be conditional upon the continuance of the recognizance, previously entered into by said petitioner, with sufficient surety in the sum of $1,000 for the appearance of said petitioner to answer the judgment of the appellate court.