192

**UNITED STATES ex rel. DRACHMOS v. HUGHES, U. S. Commissioner of Immigration for the Port of Philadelphia, et al.**
**No. M—5664.**

District Court, D. New Jersey.
Dec. 12, 1938.

Albert P. Morwitz, of Camden, N. J., for relator.

John J. Quinn, U. S. Atty., of Red Bank, N. J., and W. Orvyl Schalick, Asst. U. S. Atty., of Camden, N. J., for United States of America.

AVIS, District Judge.

The relator was born in Greece in 1901; came to the United States as a sailor in 1921; deserted his ship and remained until he was arrested on deportation proceedings. After an order of deportation, he obtained the writ of habeas corpus upon which hearing and argument has been had.

The charge is that relator at the time of his entry into the United States was not in possession of an unexpired immigration visa.

It is claimed by respondent that, although relator's original entry was in 1921, under which entry he would be protected by limitations in the Act of 1917, 8 U.S.C. A. § 101 et seq., it was an unlawful entry, and that as a matter of fact the relator left the United States in the year 1929, going to Canada, and that his return from Canada, without visa and quota, constituted a new entry, subjecting him to deportation.

The facts shown in the transcript with relation to this new entry are gleaned entirely from the sworn statements of the relator.

The relator was examined under oath on March 26, 1936 by Samuel Horowitz, an immigrant inspector, at the International Restaurant, Widener Building, Philadelphia, Pennsylvania.

With relation to entering and returning from Canada, the inspector reported that relator stated that he had never been out of the United States since his arrival, except that he had gone two or three times to Canada for pleasure; that each time he stayed over night; that it was while he worked at a club in Plattsburg, New York, and was about seven years prior to the taking of the testimony.

The second examination of relator under oath was on May 21, 1936, at Gloucester City, New Jersey. The testimony was taken before and in the presence of L. J. Agin, immigrant inspector.

With relation to the Canadian trips, relator testified that since his arrival in the United States in 1921, he had left the United States only once; that he was working as a waiter at the Champlain Club in Plattsburg, New York, and, together with three other waiters, bought an automobile; that the car was put in his name and the

license plates issued to him, but that he never drove the car; that in the spring, before business got real good, on or about March 29, 1929, the four men, including relator, drove from Plattsburg, New York, to Canada, one evening to have a good time; that he stayed over night, and came back early the next day to go to work; that he did not know where they crossed into Canada, as he did not drive the car and did not pay much attention to the roads; that they were questioned by the immigration officers upon their return to Plattsburg; that they asked to see the owner's license; that he went to Canada in the car only on one occasion; that he did not remember telling the inspector who conducted the preliminary inquiry, that he had been to Canada several times; that he paid no head tax upon return to the United States, nor was he in possession of an immigration visa; that he never secured a visa.

The last examination of relator under oath was on June 23, 1936, at Gloucester City, New Jersey, before L. J. Agin, immigrant inspector; the relator's attorney, William Vincent Mullen, being present.

Relator then testified, in reply to a question by his attorney, that he first entered the United States in 1921, but that he had been in the United States in 1915 as a sailor on board steamship Patros; that he made three trips to the United States on steamship Patros, and that he arrived in the United States in 1921 on steamship King Alexander.

After relating his various occupations and residences, relator, with relation to the Canadian trip, testified that he went to Champlain Club, in Plattsburg, New York, the first time in 1927; that he worked there from about June 10th until after Labor Day; that he went the next year to work at Plattsburg, going about the 10th of June; that he went there by auto; that the season ended that year after Labor Day; that during the summer of 1928 he made about four trips in the automobile, but that he did not know where he went on those trips; that the first trip was made early in June, before the season started in heavy; that they drove around to different places and stopped and had some refreshments, and then came back to the Club; that he was away about four hours; that the next trip was in July, after the 4th; that they went in a different direction, leaving the Club at 1:30 a. m., and returning about three hours later; that on this trip they drove around for a while and then stopped and had some refreshments; that a third trip was made with relation to the sale of the car, and a fourth trip at the time he went to the City and actually sold the car.

Relator testified that when he told Inspector Horowitz that "every time I crossed, the immigration authorities knew it", he was referring to the times he crossed from the old country to the United States, and that he was not referring to his crossing into Canada and return; that he was not in Plattsburg on March 29, 1929.

Questioned as to the fact that he had stated in his testimony that one evening he went to Canada, he testified that he did say that because he talked with his companions after they came back and the other fellows told him they had been in Canada, and he took it for granted they were there.

Examined by the inspector, relator testified that while on this trip they had refreshments; that he had a glass of beer; that he thought some of the men with him had hard liquor; that on another trip they had beer; that at the time he was questioned by Inspector Horowitz, he was of the opinion that he had actually been in Canada on the second trip; that he believed it because the boys told him, and he took it for granted; that he did not know it would mean any harm if he said that or not.

The above was the substance of relator's testimony, and upon his statements alone the Department has ordered his deportation upon the ground that his return from Canada, where he went on a pleasure trip, constituted a new entry into the United States, and that at the time he was not in possession of an unexpired immigration visa.

Counsel for relator contends that relator did not have a full, fair and impartial hearing. He first made a statement to an inspector; later he was examined under oath without being represented by an attorney, and later still was examined under oath with his attorney present. There appears no reason to suggest that he was not given full opportunity to present his case, and although at the last hearing he changed some of his former statements, it is quite clear that his admissions indicated conclusively that he did visit Canada at least once on a pleasure trip. As to fairness of hearing, see Plane v. Carr, 9 Cir., 19 F.2d 470. Regardless, however, of what this court

might determine under the testimony produced, an order of deportation cannot be stayed on the facts, if there was relevant testimony offered that tended to sustain the charge. The court cannot determine as a primary matter the weight of the evidence. See United States ex rel. Mastoras v. McCandless, 3 Cir., 61 F.2d 366.

■ Assuming, therefore, that relator did visit Canada after the passage of the 1924 Act, 8 U.S.C.A. § 201 et seq.; that his entry prior to that time was irregular, and that he was not entitled to remain, except by lapse of time in accordance with the provisions of the 1917 Act, was his return from Canada, after the passage of the 1924 Act, a new entry?

The doctrine is quite firmly established that such an act constitutes a new entry, and that the status of an alien is determined at that time. See United States ex rel. Stapf v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215.

■ It is true that in the instant case relator's sojourn in Canada was for a very short period of time, but the weight of the decisions is clear that the length of time is immaterial.

In the case of Annello ex rel. Annello v. Ward, 8 F.Supp. 797, Judge Brewster in the District of Massachusetts held it did not constitute a new entry, where an alien crossed into Canadian territory for a twenty-five minute visit on a trip from Boston to Detroit. This case seems to be an isolated one, and held to be out of line with controlling authority in the case of United States ex rel. Siegel v. Reimer, D.C., 23 F.Supp. 643. In this latter case Judge Patterson held that it constituted a new entry where an alien had visited Canada, remaining two days on a sight-seeing trip.

In the case of United States ex rel. Valenti v. Karmuth, 1 F.Supp. 370, decided in the Northern District of New York, the court held that an alien pupil in a State public school, who, under a teacher's directions, went across Lake Erie to a Canadian beach for a day's picnic, returning the same day, did not constitute a new entry.

However, that case, as well as the case of Annello ex rel. Annello v. Ward, D.C., 8 F.Supp. 797, supra, was held to be in conflict with the weight of authority in the cause of United States ex rel. Dombrowski v. Karnuth, D.C., 19 F.Supp. 222. See cited cases in 19 F.Supp. 222 and 23 F.

Supp. 643, supra. See, also, Guarneri v. Kessler, 5 Cir., 98 F.2d 580.

The law as declared by the courts appears rather rigid and somewhat severe, but I must follow what seems to me to be the very great weight of authority.

The writ of habeas corpus will be dismissed, and the relator remanded to the custody of the Commissioner of Immigration for deportation.