UNITED STATES of America, Plaintiff-Appellee,

v.

Knut Einar HEIKKINEN, Defendant-Appellant.

No. 11709.

United States Court of Appeals Seventh Circuit.

Jan. 17, 1957.

Rehearing Denied Feb. 4, 1957.

M. Michael Essin, Milwaukee, Wis., Edmund Hatfield, Chicago, Ill., for appellant.

George E. Rapp, U. S. Atty., Madison, Wis., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The defendant was convicted, under one count, of willfully failing to depart from the United States within six months from the date of an order of deportation entered against him as a resident alien and, under another count, of willfully failing to make timely application in good faith for travel or other documents necessary to his departure, in violation of Section 20(c) of the Immigration Act of 1917, as amended, 64 Stat. 1010 (1950), 8 U.S.C.A. § 156(c), now 8 U.S.C.A. § 1252(e). Defendant was found guilty on both counts in a trial by jury and judgment was entered on the verdict.

A detailed statement of the facts in this case and of the prior litigation to which defendant was a party are necessary to a proper understanding of the issues raised by this appeal.

Defendant is an alien born in Finland in 1890. He emigrated to Canada in 1910 and acquired Canadian citizenship. In 1916 he entered the United States and was admitted for permanent residence. Subsequent to 1928 defendant made numerous departures from the United States and re-entered without the necessary travel documents and without any apparent difficulty. From 1923 to 1930 and in 1932, 1947 and 1948, while in the United States, defendant was a member of the Communist Party. He spent approximately three years—from 1932 to 1935—in the U. S. S. R., and returned to the United States in 1935.

In late 1949 defendant was arrested on a warrant and charged with violations of the Immigration Act of 1924, in that at the time of entry, he was an immigrant not in possession of a valid immigration visa, and of the Immigration Act of 1918, as amended, in that he was an alien member of an organization that advocated, taught and distributed printed matter advocating overthrow, by force and violence, of the United States Government. In deportation proceedings held in New York City prior to 1950 defendant was represented by counsel, one Mr. Englander. It appears that this deportation hearing was set aside by the Immigration and Naturalization Service (hereinafter referred to as INS) on its own motion—presumably because of the decision in Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616.

Subsequent to the passage of the Subversive Activities Control Act of 1950, defendant, who had moved to Superior, Wisconsin, was rearrested by the INS and incarcerated in Duluth, Minnesota. The arrest was made pursuant to Section 23 of the Subversive Activities Control Act of 1950. Defendant's arrest and

detention without bail caused him to petition for a writ of habeas corpus—the disposition of which is reported in United States ex rel. Heikkinen v. Gordon, 8 Cir., 190 F.2d 16, certiorari granted 343 U.S. 903, 72 S.Ct. 632, 96 L.Ed. 1322, vacated and remanded 344 U.S. 870, 73 S. Ct. 163, 97 L.Ed. 674.

A hearing *de novo* of the deportation proceedings was scheduled for January 30, 1951, at Duluth, Minnesota. Defendant was again charged with violations of the Immigration Act of 1924 and the Immigration Act of 1918, as amended. A notice of appearance was received on January 25, 1951, from defendant's counsel, Mr. Englander, who had represented defendant in the prior deportation hearing, together with a letter from Mr. Englander to the effect that it was impossible for him to go to Duluth in January 1951, and that it would not be possible for him to be there in the near future. Mr. Englander was notified by INS of receipt of his letter of January 23, and informed that the hearing would be held, as scheduled, at 10:00 A.M. on January 30, 1951, at Duluth. On January 30, 1951, the deportation hearing commenced in Duluth. Defendant was informed, as he had been repeatedly informed, of his right to counsel. Mr. Englander was not present and defendant stated that Mr. Englander would not be present for the hearing. Defendant further stated that he desired to be represented by Mr. Englander, and requested a continuance to arrange for his attorney to appear. The request was granted and defendant was informed that he should be prepared to proceed with the hearing on March 1, 1951. On February 2, 1951, a copy of the transcript of the hearing on January 30, 1951, was sent to Mr. Englander and he was informed that the hearing would proceed on March 1, 1951. On February 6, 1951, Mr. Englander, in response to the letter of February 2, acknowledged receipt of the transcript and stated his desire to continue representing defendant, but stated that it would be impossible for him to travel to Duluth and requested that the hearing be transferred to New York City. On February 8, 1951, Mr. Englander was advised by the INS that the request for transfer was denied and that the hearing would proceed as scheduled. On February 13, 1951, Mr. Englander, replying to the letter of February 8, protested the denial of his request for transfer to New York City and stated that defendant would not be represented by any attorney. On February 16, 1951, the hearing officer informed Mr. Englander that the hearing would proceed on March 1, 1951. At the hearing held on March 1, 1951, additional charges were lodged against defendant, and he was granted a further continuance. Proceedings were resumed on April 12, 1951, without counsel for defendant appearing.

An order recommending deportation was entered by the hearing officer who conducted the hearing. Written exceptions were filed by Mr. Englander to the recommended order. On October 8, 1951, an order was entered by the Assistant Commissioner of the INS, adopting the recommended order with certain changes therein. An appeal to the Board of Immigration Appeals of the INS was heard on February 6, 1952, and the appeal was dismissed on April 8, 1952.

On April 30, 1952, the officer in charge of the INS at Duluth notified defendant, by registered mail, that an order directing his deportation had been entered on April 25, 1952. The letter also informed defendant of his duties under Section 156(c).

On October 14, 1953, an information was filed in the District Court for the Western District of Wisconsin charging defendant with violation of 8 U.S.C.A. § 156(c). Defendant was taken into custody and bail was set in the amount of $10,000. Another dispute concerning defendant's bail arose which was disposed of by this court in Heikkinen v. United States, 7 Cir., 208 F.2d 738. Bail was subsequently reduced and posted and defendant was released.

On November 10, 1953, defendant was indicted and found guilty on the same counts involved in the instant case. De-

fendant appealed from the sentence and judgment, and this court reversed the judgment of the District Court and remanded with directions. United States v. Heikkinen, 7 Cir., 221 F.2d 890. This court held that a valid order of deportation was a prerequisite of the statutory crime with which defendant was charged; that defendant was entitled to attack the validity of the deportation order; and that for the purpose of making a determination thereon, it was incumbent upon the trial court to review the proceedings before the administrative agency upon which the order was predicated.

A new trial was had on January 9 and 10, 1956. The trial court found that a valid order of deportation had been entered against defendant, and he was again found guilty on both counts of the indictment in a trial by jury.

Defendant claims that he was denied due process of law in the deportation proceeding; that Section 156(c) and the judgment entered thereunder violated defendant's rights under the Fifth and Sixth Amendments; that there was no affirmative duty upon defendant to effect his departure after the final order of deportation was entered; that Section 156(c) and the judgment thereunder are repugnant to the *ex post facto* clause of the Constitution art. 1, § 10; that the indictment failed to state facts sufficient to constitute an offense against the United States; that the evidence was insufficient to sustain a conviction.

■ Defendant claims that there was no proper or valid record before the trial court for it to review in determining the validity of the order of deportation entered against him. He argues that the relevant documents were not brought in, as prescribed by this court in United States v. Heikkinen, 7 Cir., 221 F.2d 890, notwithstanding the fact that he filed appropriate motions and the trial court ordered the government to do so; and that the trial court erred in receiving over objections such documents as were offered by the government. Exhibit 1 in this cause contains the transcript of the deportation hearing; the hearing officer's decision; the exceptions to the hearing officer's decision; the Commissioner's decision and order; notice of appeal; the Board of Immigration Appeals' order and warrants, together with all exhibits contained in the deportation hearing with the exception of Exhibits 11, 12, 13 and 14 which had been lost or destroyed. There were attached copies of Exhibits 11, 12, 13 and 14 which had been reproduced from other sources. Subsequent to the introduction of Exhibit 1 into the record, Exhibit 2 was offered by the government and received by the trial court. Exhibit 2 contained the originals of Exhibits 11, 12, 13 and 14. The reproductions of these exhibits were not withdrawn from the record and both the originals and reproductions were available to the trial court. Defendant contends that the substitution was made *ex parte* and unlawfully. He omits the fact, however, that Exhibits 11, 12, 13 and 14 of Exhibit 1 are identical in all respects, save one, with their counterparts in Exhibit 2. Exhibits 12, 13 and 14 of Exhibit 2 are copies of the Daily Worker for dates March 11, 1929, May 21, 1929, and May 25, 1929. Exhibits 12, 13 and 14 of Exhibit 1 are copies of the same newspaper for the same dates containing word for word the identical matter in the originals, but of different editions. Exhibit 11 of Exhibit 1 is a transcript of the testimony of defendant given at a hearing held on the petition of defendant for a writ of habeas corpus on November 10, 1950, before the United States District Court for the District of Minnesota. Exhibit 11 of Exhibit 2 is a certified copy of the same testimony, but contains in addition the testimony given at such hearing by an immigration official. Defendant has not demonstrated, as he obviously could not, that he was in any manner prejudiced by the substitution. There was no discrepancy that could have possibly affected the trial court's review of the deportation proceeding in determining whether a valid order of deportation had been entered against defendant. Even if it be assumed that the sub-

stitution should not have been made *ex parte* and that the reproductions should have been withdrawn from the record when the originals were produced, defendant's argument is not furthered in the slightest degree. Any error, defect, irregularity or variance which does not affect the substantial rights of defendant must be disregarded. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.

Defendant objects to the presence of the deportation warrants in the record. At worst, they are mere surplusage, having no relevancy to the question of the validity of the deportation order, and there is nothing in the warrants which in any manner might have affected the trial court's review of the deportation proceedings.

Defendant finally claims that a letter dated January 19, 1951, from the District Director of the INS at Chicago to the officer in charge of the INS office at St. Paul, Minnesota, was erroneously omitted from the record. This letter was an intradepartmental letter pertaining to the question of the appearance of a certain court reporter as a witness at the defendant's deportation hearing, if such hearing were to be held in New York City. This letter obviously had no bearing on the validity of the deportation order.

We conclude therefore that there was a proper or valid record before the trial court for it to review and that no error was committed concerning the admission of documents.

■ Defendant asserts that he was deprived of the right to counsel in the deportation proceeding. The basis of this contention as advanced by defendant is that since the deportation proceeding was originally instituted in New York and subsequently transferred to Duluth, Minnesota, he was deprived of the assistance of Mr. Englander, who found it impossible to travel to Duluth, and that, therefore, the proceedings should have been transferred to New York as requested by defendant. And as evidence that the INS acted arbitrarily and capriciously, defendant points to the fact that two government witnesses were transported at government expense from New York City, where they resided, to Duluth to testify against defendant. During the interim, however, defendant had moved from New York City to Superior, Wisconsin, a small town near Duluth. The City of Superior became defendant's residence and place of employment and was the place where he was arrested. In view of these facts it would appear that the locality where defendant was then living was the proper place to file and hear the deportation proceedings. See United States ex rel. Mastoras v. McCandless, 3 Cir., 61 F.2d 366, 368. In any event, we cannot say that the immigration authorities' choice of time and place was unreasonable or arbitrary. Nor does it appear that the denial of defendant's request to transfer the proceedings to New York constitutes a deprivation of defendant's right to counsel. We have recited with some detail the correspondence between the INS and Mr. Englander concerning the choice of place for holding the hearings and Mr. Englander's asserted inability to travel to Duluth. It is evident from the correspondence that Mr. Englander gave little, if any, consideration to the possibility of his traveling to Duluth. In addition, defendant was granted two continuances for the purpose of enabling him to secure counsel—from January 30, 1951 to March 1, 1951, and from March 1, 1951 to April 12, 1951. Nevertheless, Mr. Englander still refused to travel to Duluth for the hearings even though defendant steadfastly insisted that he wanted to be represented by Mr. Englander. Cf. United States ex rel. Gould v. Uhl, D.C.S.D.N.Y., 6 F.Supp. 696. In short, defendant, who was repeatedly informed of his right to counsel and was given more than ample opportunity to secure the assistance of counsel, chose to proceed without counsel. Due process certainly did not require that the hearing be moved from Duluth to New York City in order that defendant might have the services of Attorney Eng-

lander who refused to come to Duluth to act as defendant's counsel.

■ Defendant contends that he was deprived of his liberty in violation of his rights to due process and to the safeguards of a criminal trial in that the finding that he was an alien guilty of conduct subjecting him to deportation does not require proof beyond reasonable doubt, but may be made on mere preponderance of evidence. In essence, defendant urges that the issue of the validity of the order of deportation must be tried in the criminal trial by the jury. Defendant finds support for this contention in Mr. Justice Jackson's dissenting opinion in United States v. Spector, 343 U.S. 169, 174, 72 S.Ct. 591, 96 L.Ed. 863. However, the concept of a jury passing independently on an issue previously determined by an administrative body or reviewing the action of an administrative body is contrary to settled federal practice. The constitutional right to trial by jury does not include the right to have that body pass on the validity of an administrative order. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Yakus v. United States, 321 U.S. 414. Although defendant is entitled to attack the validity of the order, United States v. Heikkinen, 7 Cir., 221 F.2d 890, he has full protection by having the issue submitted to the trial judge and the reviewing courts as was done in the instant case. The case of Wong Wing v. United States, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140, cited by defendant and relied upon by Mr. Justice Jackson in the Spector case is not in point. The Court held in that case that Congress could not "declare unlawful residence within the country to be an infamous crime, punishable by deprivation of liberty and property * * * unless provision were made that the fact of guilt should first be established by a judicial trial." 163 U.S. at page 237, 16 S.Ct. at page 981. The question of guilt under Section 156(c) is resolved by a ju-

dicial trial with all its inherent safeguards. The indictment in the instant case charged defendant with willful failure to depart from the United States and willful failure to make timely application in good faith for necessary travel documents, and the question whether defendant had committed the crimes thus charged was properly the only issue submitted to the jury.

Defendant also argues that the conviction herein, resting upon a previous determination in deportation proceedings, is obnoxious to due process of law for the added reason that the defendant was adjudged deportable in such proceeding by an immigration officer who was not fair and impartial, in that he performed both the function of judge and prosecutor. However, at the time the order in question was entered, the pertinent provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., were not applicable to deportation proceedings. 8 U.S.C.A. § 155(a)[1]; Belizaro v. Zimmerman, 3 Cir., 200 F.2d 282.

■■ Defendant contends that Section 156(c) imposed no affirmative duty upon him to effect his departure; that under this statute the only duties which rest with the alien are: (a) not to conceal his whereabouts after the final order of deportation has been entered, and (b) to present himself for deportation when requested to do so by the Attorney General. However, Section 156(c) defines four specific, different acts or omissions to act as constituting a crime: (1) willful failure or refusal to depart; (2) willful failure or refusal to make timely application in good faith for necessary travel documents; (3) connivance or conspiracy or any other action, designed to prevent or hamper the alien's departure, or with the purpose of so doing; and (4) willful failure or refusal of the alien to present himself for deportation as required by the Attorney General. Defendant's proposed construction of the Act would read out of the Act the crimes defined above in 1 and 2 (labeled for convenience). This

1. Now 8 U.S.C.A. § 1251(a, d, e).

we may not do. Defendant was charged with willful failure to perform certain enumerated acts. "Failure" is an omission to perform a duty or appointed function; and the duty in this instance was for defendant to make timely application in good faith for the necessary travel documents and to depart from the United States within six months from the date of the order of deportation. The defendant performed neither of these duties. The fact that the Attorney General was under a duty to effect the defendant's departure from this country did not, of course, excuse the defendant from taking the steps which the Act expressly required of him. The trial court correctly instructed the jury that Section 156 (c) imposes upon the alien "an affirmative duty and an obligation on his part to take specific steps toward effecting his own departure from the United States and to that end to make timely application for travel or other documents necessary to such departure." The scope and extent of the Attorney General's efforts, if any, to effect defendant's departure are immaterial to the question of whether defendant discharged the duties imposed upon him. Nor is it necessary that it be shown that there was a country available which would admit defendant. The choice of a country willing to receive defendant is left in the first instance to the defendant himself. United States v. Spector, 343 U.S. 169, 171, 72 S.Ct. 591. If defendant has made timely application in good faith for necessary travel documents which are refused because no country is willing to receive him, he has not violated Section 156(c). United States v. Spector, 343 U.S. at page 172, 72 S.Ct. 591. But the defendant cannot claim as a defense the fact that no country will receive him unless he has discharged the duty imposed upon him of making timely application for the necessary travel documents. We do not now attempt to define "in good faith" as used in this portion of the Act because here the defendant did not make even a gesture towards effecting his departure.

Defendant next urges that Section 156(c), in so far as it imposed a penalty for an act that was committed before the statute was enacted, is void because it is an *ex post facto* law. The government apparently failed to perceive the purport of defendant's argument and merely answered defendant by citing the principle that the *ex post facto* clause of the Constitution has no application to deportation proceedings. However, this phase of defendant's appeal is not an attack upon the deportation proceeding or the order of deportation that was subsequently entered against him, but upon the penal sanction that was imposed on him in a criminal proceeding—to which the *ex post facto* prohibition is obviously applicable. Nevertheless, defendant's contention must fail because he is not being punished for an act that was not punishable at the time it was committed, or being punished in addition to that then prescribed. Section 156(c) became effective September 23, 1950. The order directing defendant's deportation was entered on April 25, 1952, and defendant was indicted on November 10, 1953. Defendant's failure to act, here complained of, occurred subsequent to April 25, 1952, and therefore subsequent to the effective date of the Act. Thus, the criminal acts for which defendant was convicted were committed subsequent to the effective date of Section 156(c), and that section clearly informed the defendant that his failure to act as' here charged would be punishable as prescribed by the Act. Nor does Section 156(c) add a new punishment to that before prescribed. Defendant insists that he was not warned that under some future statute his wrongful conduct, *i. e.*, communist activities or affiliations, would subject him to a penalty in addition to deportation if, when ordered deported, he should fail or refuse to depart from this country. However, in this cause defendant is not being punished for his alleged communist activities or affiliations, but for his willful failure to make timely application for necessary travel documents and to depart from the United States. Defend-

ant's conduct which subjected him to deportation occurred prior to the effective date of Section 156(c), but the penalty is imposed for acts committed subsequent to the Act of September 23, 1950, which is a new and isolated enactment that relates to the antecedent deportable conduct only in the sense that such conduct was necessary to a valid order of deportation which, in turn, is a prerequisite to a conviction under Section 156(c).

■ Defendant urges that the indictment herein is fatally defective under the statute because it failed to allege: (1) knowledge by defendant of the entry of the order of deportation and of the contents thereof; (2) the defendant's freedom to depart from this country, and the willingness of some foreign country to admit him into its territory; (3) by what authority, or upon or pursuant to what hearing, if any, an order of deportation was issued, and whether such hearing, if any, accorded him due process; (4) the country to which defendant was ordered deported; (5) the country of origin of the defendant or the country of which he is, or last was, a citizen. Items 2, 4 and 5 are necessary allegations only under defendant's erroneous interpretation of Section 156(c) which has already been disposed of. Item 1 is properly an evidentiary matter relegated to the trial and, in any event, an indictment which substantially follows the wording of a statutory crime, as was the case here, is sufficient, Jelke v. United States, 7 Cir., 255 F. 264, and the indictment clearly informed defendant of the charge against him in such a manner that he could prepare his defense. Although defendant is entitled to attack the validity of the deportation order, it is not necessary for the indictment to allege that defendant was accorded due process of law before the administrative tribunal nor pursuant to what authority or hearing the order was issued. None of these elements are part of the crime with which defendant was charged.

Finally, the concurring opinion of Judge Major, joined in by Judge Schnackenberg, in United States v. Heikkinen, 7 Cir., 221 F.2d 890, 893, which involved the same indictment as that in the instant case, stated:

"Nothing was placed in issue by defendant's motion to dismiss the indictment other than the legal question as to whether an offense was charged under the terms of the statute. If not, defendant was entitled to have the charge dismissed and that would have ended the matter. I think, however, that the indictment stated a good cause of action and that the motion to dismiss was properly denied."

We have made an examination of the record before us and find that it contains substantial proof to support the verdict of the jury.

The judgment is affirmed.