## UNITED STATES ex rel. RUBIO v. JORDAN.

### No. 10351.

United States Court of Appeals
Seventh Circuit.

July 24, 1951.

Ward H. Harris, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Anna R. Lavin, Asst. U. S. Atty., Chicago, Ill. (John M. McWhorter, Acting Dist. Counsel, Immigration and Naturalization Service, Chicago, Ill., of counsel), for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from an order of the District Court dismissing a petition for a writ of habeas corpus filed by the petitioner who had been arrested to be deported to Mexico. The petitioner, Rigoberto Chavez Rubio, is an alien, a native and citizen of Mexico who has been living in the city of Chicago in Cook County, Illinois for many years. He has entered the United States four times, once when he was a small child; once in 1925, at Laredo, Texas; once on December 18, 1944, at El Paso, Texas; and finally, on June 14, 1949, at Del Rio, Texas.

On January 21, 1949, the petitioner was deported to Mexico in accordance with the order of the Acting District Director of

Immigration and Naturalization on a warrant charging that he had illegally entered the United States on December 18, 1944, at El Paso, Texas. Prior to his deportation on January 21, 1949, he was given a hearing by an officer of the United States Immigration and Naturalization Service. During the course of that hearing evidence was adduced showing that at the time of his entry on December 18, 1944, the petitioner was an immigrant not in possession of an immigration visa and not exempted from the presentation thereof; and that on July 29, 1935, on his plea of guilty, he was convicted of a felony involving moral turpitude, to-wit: burglary. As a result of that hearing petitioner was ordered deported. The order of deportation was affirmed by the Board of Immigration Appeals and the petitioner then filed a petition for a writ of habeas corpus in the United States District Court in Chicago. After a hearing thereon the District Court found that all of the proceedings against the petitioner by the Immigration and Naturalization Service had been entirely fair, and that the evidence sustained the order of deportation. The petitioner was accordingly deported January 21, 1949.

In the instant case the trial court found that the petitioner again entered the United States in June, 1949, without an immigration visa and that he was not exempted from the presentation thereof by any law or regulation, and that on October 21, 1949, he was again taken into custody on a new warrant of arrest, issued by the Acting District Director of Immigration and Naturalization in Chicago, Illinois.

The petition herein alleges that while in Mexico in 1949, the petitioner wrote a letter to the Attorney General to see what could be done about obtaining a visa to re-enter the United States for permanent residence; that he received no reply and "consequently" he re-entered the United States without an immigration visa. Respondent attached to his return, as an exhibit, a copy of a letter from the Attorney General dated April 4, 1949, addressed to petitioner denying petitioner's request.

The court found that the immigration authorities gave petitioner another hearing which was held on April 26 and May 2, 1950, and that on the basis of the evidence adduced at that hearing the Assistant Commissioner of Immigration and Naturalization on August 16, 1950, entered a new order directing the petitioner's deportation to Mexico on the charges:

(1) That at the time of entry he was an immigrant not in possession of a valid immigration visa and not exempted from the presentation thereof by the Immigration Act or regulations made thereunder.

(2) That petitioner's entry of June, 1949 was within one year of the date on which he had been arrested and deported in pursuance of law.

(3) That he had admitted having committed a felony involving moral turpitude prior to entry into the United States, to-wit: burglary.

(4) That he had been convicted of a felony involving moral turpitude prior to his entry into the United States, to-wit: burglary.

The Board of Immigration Appeals dismissed the appeal from this order on September 19, 1950. Thereupon the Acting District Director of Immigration and Naturalization in Chicago, Illinois, issued a warrant of deportation, directing that the petitioner be again deported to Mexico on the charges stated above. In the hearings conducted by the immigration authorities in 1950, the petitioner was represented by his present counsel. When the respondent attempted to execute the warrant of deportation the petitioner, on September 29, 1950, instituted the instant action.

The petitioner was born in Mexico August 10, 1907. In 1928 he married Leonora Rubio, an American citizen, in the state of Texas. Six children were born to the petitioner and his said wife, the oldest being now 20 years of age and the youngest 12 years of age. All of these children are now living in the United States. Their mother died in 1943.

The petitioner was inducted into the Army of the United States on October 12, 1942, and was honorably discharged on October 6, 1945. The trial court found that on June 23, 1944, a military furlough was is-

sued to the petitioner by his commanding officer for the purpose of visiting his sick mother in Mexico. (The petitioner testified, however, as follows: "My mother died in 1944 and I went there to straighten up the property.") The petitioner remained in Mexico until December 18, 1944, when he re-entered the United States in full uniform and in possession of his furlough papers. It was this 1944 entry which was found to be illegal in the first deportation proceedings.

It is admitted that at the time petitioner re-entered the United States in 1944, he was absent without leave in violation of Article 61 of the Articles of War, 10 U.S. C.A. § 1533. At the time of that entry petitioner stated to the Immigration authorities at the border that there was a record of his prior legal admission to the United States for permanent residence at the port of Laredo, Texas. In his present deportation proceedings, however, the petitioner testified he had never been admitted to the United States for permanent residence.

8 U.S.C.A. § 180(a) provides: "If any alien has been arrested and deported in pursuance of law, he shall be excluded from admission to the United States * * *."

Petitioner's chief contention is that he cannot be deported on account of his entry in 1949, because his deportation in January of that year was not pursuant to law; that he was not voluntarily in Mexico when he last re-entered this country in June, 1949; and that this return to the United States therefore did not constitue an "entry" within the meaning of the Immigration Act. To support this contention the petitioner relies strongly upon the case of Delgadillo v. Carmichael, 1947, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17. In that case the alien was serving aboard a ship which was torpedoed in the Carribbean. He and the other survivors were then taken to Cuba, from whence they were returned to the United States. It was charged that this return was an illegal entry into this country. The Supreme Court said 332 U.S. at page 391, 68 S.Ct. at page 12: "We might as well hold that if he had been kidnapped and taken to Cuba, he made a statutory 'entry' on his voluntary return."

From this case petitioner argues that anyone taken out of this country against his will cannot be said to have entered the country when he returns. However, in that case the alien had originally been in this country legally and was returning to a legal residence here.

In U. S. ex rel. Bartsch v. Watkins, 2 Cir., 175 F.2d 245, an alien who had entered this country illegally claimed in a second deportation proceeding that an earlier deportation had been illegal—was in effect a forced departure so that his return in 1947 to the port of Baltimore was not an "entry" and the order excluding him was wrong. The alien there also relied on the Delgadillo case but the court said, 175 F.2d at page 247: "Bartsch (the alien) had never lawfully entered the United States and the lapse of years before his arrest for deportation gave him no right of residence of which his deportation—however irregular— deprived him. * * *

"Therefore * * * it is unnecessary to determine the validity of the 1946 deportation. Even if it be assumed that it was wrong * * * he had no right to reenter the Unites States without compliance with our immigration laws."

 It is conceded that petitioner's return to Mexico in January, 1949, was not vountary, but his re-entry into this country was of his own volition and in violation of the Immigration laws. Delgadillo v. Carmichael, supra is not applicable to the factual situation in the instant case. There the alien was returning to a lawful residence in this country. Here the alien admits that he never legally entered this country for permanent residence and never became a citizen of the United States. His presence here was therefore illegal at all times. His service in our army did not change his status. Neither an illegal deportation nor his being kidnapped and taken to a foreign land would have authorized his re-entry into the United States for resumption of his unlawful residence here.

 In U. S. ex rel. Steffner v. Carmichael, 5 Cir., 183 F.2d 19, 20–21, certiorari denied Steffner v. Savoretti, 340 U.S. 829, 71 S.Ct. 67, valid reasons are assigned for

not permitting such collateral attacks on former deportation proceedings—unless the court is convinced "that there was a gross miscarriage of justice in the former proceedings." It is there pointed out that there are numerous cases where aliens are deported several times and if in each subsequent case the validity of the previous deportation orders had to be determined, "there would be no end to the proceedings cast upon administrative agencies."

Here we find no such gross miscarriage of justice in the former deportation proceedings as would justify our review of those proceedings. At each step the petitioner was represented by counsel. After the deportation order was affirmed by the Board of Immigration Appeals a petition for habeas corpus was filed in the District Court here in Chicago but the court found that "the proceedings before the Immigration and Naturalization Service and the Board of Immigration Appeals were entirely fair." No appeal was taken from that judgment. The judgment therefore became final and petitioner was accordingly deported.

The judgment of the District Court is affirmed.