The UNITED STATES of America,
Plaintiff-Appellee,

v.

Knut Einar HEIKKINEN, Defendant-
Appellant.

No. 11208.

United States Court of Appeals,
Seventh Circuit.

April 13, 1955.

Rehearing Denied May 16, 1955.

M. Michael Essin, Milwaukee, Wis., Kenneth J. Enkel, Minneapolis, Minn., for appellant.

George E. Rapp, U. S. Atty., Madison, Wis., James H. McDermott, Asst. U. S. Atty., Madison, Wis., for appellee.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

In its revision, enacted June 27, 1952, of laws relating to immigration, naturalization and nationality, Congress provided in the Immigration and Nationality Act, 66 Stat. 163, 281, § 407 (1952), 8 U.S.C.A. § 1101 note, *inter alia*:

"Sec. 407. * * * this Act shall take effect at 12:01 ante meridian United States Eastern Standard Time on the one hundred eightieth day immediately following the date of its enactment."

Section 241(a) of that Act, 8 U.S.C.A. § 1251(a), specifies various grounds for deportation, and by clear language brings within its sweep an alien who "is or at any time has been" a member of any one of several itemized classifications. This provision is geared to § 242 (e), of the Act.

Defendant, an alien, was found guilty April 13, 1954, by a jury on two counts of an indictment citing 8 U.S.C. 137 and § 1, Act of Oct. 16, 1918, as amended, 64 Stat. 1006, now see: 66 Stat. 163, 211, § 242(e), 8 U.S.C.A. § 1252(e), charging: (I) wilful failure to depart from the United States within six months after an order of deportation was entered against him and, (II) wilful failure to make timely application for travel or other documents necessary for his departure. Challenging the judgment entered below, he invokes the Fifth and Sixth Amendments, and Article I, § 9, cl. 3, of the Constitution.

Heikkinen v. United States, 7 Cir., 1953, 208 F.2d 738, and United States ex rel. Heikkinen v. Gordon, 8 Cir., 1951, 190 F.2d 16, each supply historical facts, also appearing in the briefs and record here, consequently it is unnecessary to detail them. Government Exhibit 2 contains the Immigration and Naturalization Service, Department of Justice, findings of deportability:

"(2) That respondent is subject to deportation under the Act of October 16, 1918, as amended, in that he was, after entry, a member of the following class set forth in Section 1 of said Act; an alien who was a member of the Communist Party of the United States."

After disposing, in its findings, of various contentions interposed on the alien's behalf, by his counsel, this exhibit concludes with:

"Order: It is ordered that the alien be deported from the United States pursuant to law, on the following charges:

"The Immigration Act of May 26, 1924, in that, at the time of entry, he was an immigrant not in possession of a valid immigration visa and not exempted from the presentation thereof by said Act or regulations made thereunder;

"The Act of October 16, 1918, as amended, in that he was, after entry, a member of the following class set forth in Section 1 of said Act. An alien who was a member of the Communist Party of the United States."

After deportation was thus ordered, October 8, 1951, defendant was heard by the Board of Immigration Appeals, which, on April 9, 1952, ordered his appeal dismissed.

As in Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, defendant shows his deportable conduct antedated the enactment of legislation now subjected to constitutional attack. Yet, Mr. Justice Frankfurter, speaking for the majority of a divided court, summarized the answer, which we now follow, to challenges predicated upon retroactive aspects:

" * * * Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of

892

government. In the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process. (Citing.) But that the formulation of these policies is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government. And *whatever might have been said at an earlier date for applying the ex post facto clause, it has been the unbroken rule of this Court that it has no application to deportation.*" Id. 347 U.S. 531, 74 S.Ct. 743, italics supplied.

Our holding in United States ex rel. Circella v. Sahli, 7 Cir., 1954, 216 F.2d 33, 40, and cases there collected, is consistent with that view. See also Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586. We are not now persuaded that § 156(c) contravenes clause 3, § 9, article I of the Constitution.

Validity of the underlying deportation order was put squarely in issue by defendant's motion to dismiss the indictment. We think it abundantly clear, from this record, that the district judge misunderstood United States v. Spector, 1952, 343 U.S. 169, 172–173, 72 S.Ct. 591, 594, 96 L.Ed. 863, because Mr. Justice Douglas clearly stated:

"It will be time to consider whether the validity of the order of deportation may be tried in the criminal trial either by the court or by the jury (citing) when and if the appellee seeks to have it tried. That question is not foreclosed by this opinion. We reserve decision on it."

In the present appeal we have an alien who has exhausted his administrative remedies, sought production of documents, moved for pretrial discovery of documents pursuant to Fed.Rules Crim. Proc. rule 17(c), 18 U.S.C.A., and moved for dismissal of the indictment all of which have been denied. Save for a few crumbs of colloquy between court and counsel we are unable to satisfy ourselves but what the trial judge decided all basic issues under his version of the Spector case. We illustrate our position by pointing to defendant's first ground for dismissing the indictment, *i. e.,* "Count One of the indictment fails to show that a lawful Order of Deportation was ever entered against defendant." Mere production of a certified copy of that order hardly meets the challenge leveled against it; nor will reliance upon Spector equate to an imprimatur for this deportation order. Quite the contrary, for the case before us fits into the interstices created by the Spector majority. Validity of that order is an inescapable ingredient of the statutory offense with which defendant is charged, indeed it is the precursor of those consequences making behavior criminal under the statutory section on which the indictment is based. To date, that order remains unreviewed by any court. Yet, apparently, without any judicial testing, below, of this final administrative order, finding the defendant guilty was virtually directed when the trial judge instructed the jury:

"The order of deportation involved in this proceeding was entered after notice to defendant and a hearing had by the defendant pursuant to statute. And you are instructed that said order of deportation is valid and effective for all purposes here, and you will so regard it in all of your deliberations."

Some of the questions raised in this appeal will not be ripe for our consideration until the District Court has again considered the problems posited by the motion to dismiss the indictment, together with the other interrelated pleadings.

Also requiring our attention is the scope of inquiry to be undertaken by the trial judge when testing validity of this deportation order on remand. While we can neither anticipate nor prejudge this situation, and much less fetter the district court, there are several guiding benchmarks that may properly be pointed out in addition to those already mentioned.

Of course, our views contained in this opinion would be misconstrued if it be thought they constitute an invitation or authorization for a *de novo* hearing on the merits underlying this order of deportation. Far from it. Heikkinen is entitled, we think, to have the trial judge ascertain whether he was accorded due process before the Immigration and Naturalization Authorities; whether the Rules embodied in the Regulations of the Immigration and Naturalization Service were adhered to and pertinent statutory provisions duly followed. See e. g., § 1252(b) (4) of the Immigration and Nationality Act prescribing evidentiary standards. Since this evaluation could not be fairly undertaken, without the relevant documents before the district judge it will be necessary to have them brought in upon appropriate motions made by defendant. The difficulty, of course, is where to draw the line between merely opening the sluices for fishing expeditions via subpoena *duces tecum*, and a legitimate situation where the alien must be afforded an adequate opportunity of buttressing his challenges launched against the deportation order by demonstration through examination of underlying documents. It is in the showing made in support of pre-trial discovery and for a subpoena *duces tecum* that the trial judge must turn when ascertaining the sweep of production he will permit.

The judgment below, entered on the jury's verdict, is reversed and the cause remanded with directions to proceed consistent with the views expressed in this opinion.

Reversed and remanded with directions.

MAJOR, Circuit Judge (concurring). I agree with the holding by Judge Finnegan that the involved provision of the Immigration and Nationality Act is constitutional and with his reasoning in that respect. I also agree that the conviction should be reversed for a new trial because of the prejudicial error committed by the trial court. However, I do not agree with some of the statements contained in Judge Finnegan's opinion. For instance, he states, "Validity of the underlying deportation order was put squarely in issue by defendant's motion to dismiss the indictment." Statements of similar effect appear at other points in the opinion. In my view, this is an erroneous statement. Nothing was placed in issue by defendant's motion to dismiss the indictment other than the legal question as to whether an offense was charged under the terms of the statute. If not, defendant was entitled to have the charge dismissed and that would have ended the matter. I think, however, that the indictment stated a good cause of action and that the motion to dismiss was properly denied.

The prejudicial error for which I would reverse and remand was the court's refusal to permit an attack by the defendant upon the validity of the deportation order. I agree, of course, that the defendant was not entitled to a trial *de novo*. He was entitled, however, to attack the validity of the deportation order and, for the purpose of making a determination thereon, it was incumbent upon the trial court to review the proceedings before the administrative agency upon which the order was predicated. There is no precedent of which I am aware which delineates the scope of such review. However, the Immigration and Nationality Act of 1952 [1] prescribes the requirements to be met and the rights to be accorded an alien as a basis for a valid deportation order.[2] True, the deportation order in the instant case was entered prior to the effective date of the

---

1. 8 U.S.C.A. §§ 1101–1503, inc.

2. 8 U.S.C.A. § 1252(b):
   "(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

   "(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, au-

1952 Act and the latter is not controlling. Even so, these provisions laid down by Congress as to the procedure to be followed and the nature of the hearing to be accorded an alien whose deportation is sought appear reasonable and fair. Therefore, I would adopt them as a guide to the District Court in determining the scope of review to which defendant is entitled in connection with his contention that the deportation order is invalid.

SCHNACKENBERG, Circuit Judge. I join in the concurring opinion.

thorized to practice in such proceedings, as he shall choose;

"(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and

"(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."