Fermin ARRIAGA–RAMIREZ, Appellant,

v.

UNITED STATES of America,
Appellee (two cases).

Nos. 7429–7430.

United States Court of Appeals
Tenth Circuit.

Dec. 23, 1963.

John E. Patterson, Jr., Oklahoma City, Okl., for appellant.

Arthur L. Fine, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellant was charged and convicted in two cases for unlawfully reentering the United States after being deported, in violation of Section 276 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1326. In case No. 7429, appellant was charged by indictment in the United States District Court for the District of Colorado, stating that he, an alien, was arrested and deported from the United States on July 20, 1950; that he reentered the United States and was found in Denver, Colorado, on December 6, 1960. It further charged that he had not secured the necessary permission from the Attorney General to apply for readmission into the United States. This indictment was filed in 1961, but before time for trial appellant voluntarily departed to Mexico. This departure on June 25, 1961, was considered to be a voluntary deportation, and in case No. 7430, information was filed against appellant, charging that he, an alien, had been deported on June 25, 1961 (when he voluntarily left the country), and that he was found in Denver, Colorado, on February 2, 1963, again without having secured permission of the Attorney General to apply for readmission. The two

cases were consolidated for trial, and appellant was found guilty by the jury in both actions. Motion for new trial was denied and appellant has taken this appeal.

In case No. 7429, to prove appellant's deportation in 1950, the Government offered an official Warrant of Deportation which directed that an officer of the Immigration and Naturalization Service take into custody one Fermin Arriaga-Ramirez and deport him. On the reverse side of the Warrant over the signature of W. C. Henry appears a statement that he executed the Warrant by deporting Fermin Arriaga-Ramirez at Laredo, Texas, on July 20, 1950. At the trial this Mr. Henry testified that he was then serving as an officer at Laredo, was engaged in giving hearings to and deporting aliens to Mexico, and that his signature appeared on the deportation order indicating that he personally deported this alien across the border. He also testified that it was the practice at Laredo at that time, when a person was being deported, to refer to a Closing Report which accompanied the Warrant. This Report bore the descriptive data on the deportee, and the officer would check the personal description and photograph against the individual being deported. The Warrant and Closing Report for Fermin Arriaga-Ramirez were admitted in evidence. The Report bears the same name and file number as the Warrant, and has attached to it a photograph which the court concluded had a prima facie resemblance to the defendant so that the jury could compare it with the defendant in court. The Report also contains a general description of the individual including a statement that Fermin Arriaga-Ramirez had a certain tattoo on his left wrist. A witness for the Government testified the appellant had such a tattoo.

In case No. 7430, to show the voluntary departure of June 25, 1961, the Government introduced a Warrant of Deportation and the decision of a hearing examiner ordering deportation (appellant identified this as an application for voluntary deportation). The officer testified that the final order in the deportation hearing was for deportation to Mexico, and testified that appellant later admitted during an interview that he had deported himself about June 25, 1961. This witness knew and identified appellant. The Government contends that this admission was corroborated by letters written by appellant which were in evidence. The testimony showed that appellant was again found in Denver in February 1963.

On this appeal two related points are urged by appellant in both cases. The first point is that the United States failed to prove by competent evidence that appellant had been arrested and deported prior to the alleged illegal reentries of April 15, 1959, and February 2, 1963. The second point is that there is a lack of competent evidence to identify appellant as the person purportedly deported on July 20, 1950, and June 25, 1961. As indicated, the trial court denied motions for new trial and had previously denied motions for acquittal on essentially the same grounds as are urged on this appeal.

In No. 7429, the proof to identify the appellant as the same person who was deported in 1950 is indicated above. It consisted of the photograph in the Closing Report, the tattoo described in this Report as compared with the one the witness at trial testified was on appellant's wrist, and there was the similarity of names. The trial judge held this was sufficient to go to the jury, and we agree. The proof that a person so identified was actually deported on July 20, 1950, at Laredo, Texas, was the above described testimony of an officer who detailed the practice followed in Laredo, together with the testimony that it was the witness's signature on the Warrant of Deportation showing it had been executed. It is proper to show custom as an element of the proof of identity and of physical deportation. This court in a case concerning the examination of veterans on discharge upheld the admission of evidence of the general plan or

routine followed at the time in question. Thatenhorst v. United States, 119 F.2d 567 (10th Cir.). Such proof has probative value. 1 Wigmore, Evidence § 92 (3d Ed.). The agent in No. 7430 identified appellant from previous contact with him.

Appellant further urges that as to the deportation of 1950, it is not sufficient to introduce the Warrant and to prove its execution. He urges that at least the deportation proceedings must also be shown. The trial court considered the proof of authority for deportation was sufficient as was the proof of actual deportation, and we agree. The steps leading to the deportations of appellant need not be proved as appellant here contends. The statute, 8 U.S.C. § 1326, requires only that it be shown there was a previous "deportation." It has been held that a deportation cannot be collaterally attacked in a prosecution under 8 U.S.C. § 1326. United States ex rel. Rubio v. Jordan, 190 F.2d 573 (7th Cir.). United States ex rel. Bartsch v. Watkins, 175 F.2d 245 (2d Cir.), held that it was not necessary to determine the validity of the prior deportation because, under any circumstances, the alien had no right to re-enter. These cases indicate that the proceedings are not reopened and need not again be established.

In case No. 7430, appellant contends that his voluntary departure to Mexico on June 25, 1961, was not proved and does not constitute a deportation. The proof shows that at that time appellant was free on bond pending trial in the criminal case which is now No. 7429, and an order of deportation was outstanding when he left the United States. In Corsetti v. McGrath, 112 F.2d 719 (9th Cir.), appellant, without his knowledge, was ordered deported. He left the country of his own accord. The court held that this leaving was "deportation" under the predecessor of 8 U.S.C. § 1326. It seems clear that voluntary deportation under these conditions amounts to "deportation." United States v. Maisel, 183 F.2d 724 (3d Cir.).

8 U.S.C. § 1101(g) provides that an alien ordered deported who has left the United States should be considered to have been deported. On the point as to whether he thereafter left the country, the Government introduced letters from appellant which showed he had departed, and also its witness testified that appellant under oath had told him that he had voluntarily left the country. This proof was sufficient. The departure to Mexico from the United States by appellant under the circumstances here shown, on June 25, 1961, constituted a "deportation" for the purpose of 8 U.S.C. § 1326.

Appellant's argument of his point of failure to identify appellant as the one deported is based largely on Gravatt v. United States, 260 F.2d 498 (10th Cir.). There the Government attempted to show a prior conviction by introducing a certified copy of a judgment and sentence by an Oklahoma court of a person of the same name, and a certified copy of the sheriff's return showing the execution of such sentence. The question was whether this was sufficient proof that the accused was the same person who had been previously convicted. This court held that this was not sufficient proof. The court in the cited case referred to Woods v. State, Okl.Cr., 327 P.2d 720 (1958), where the Oklahoma court held that the method of proving a prior conviction was to first introduce in evidence the indictment or information, judgment and sentence and commitment, and that the "[p]roof of the facts should then be made that the defendant, in the case on trial, is one and the same person as the defendant in the prior conviction relied upon to establish the second or subsequent conviction." The case at bar is not comparable to the Gravatt case because the proof to identify the accused as the one previously deported is substantial, as above described, while in the Gravatt case the proof rested only on the names used in each instance. The question there before the court was thus one of adequacy of proof of identity by such means. This is also part of the question in the case at bar, and the proof here is

clear and substantial in contrast to that before the court in the Gravatt case.

The record shows that there was substantial proof of deportation in both cases and there was substantial proof to identify appellant as the person previously deported in both instances.

Affirmed.