**UNITED STATES of America,
Plaintiff,**

v.

**Angelo F. BRUNO, Defendant.**

**Crim. A. No. 23138–3.**

United States District Court,
W. D. Missouri, W. D.

May 4, 1971.

Supplemental Opinion May 18, 1971.

---

Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Kenneth K. Simon, Kansas City, Mo., for defendant.

## MEMORANDUM FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT OF CONVICTION OF DEFENDANT

WILLIAM H. BECKER, Chief Judge.

In the indictment returned herein on June 17, 1970, defendant was charged with being found in the United States on or about May 25, 1970, after having been deported from the United States on or about December 10, 1956, and with being knowingly and unlawfully in the United States in violation of Section 1326, Title 8, United States Code.

This cause has twice been set down by the Court for trial by jury. By the order of this Court entered on October 28, 1970, the trial was set for November 19, 1970. On motion of defendant's counsel, however, who stated that he was in trial in another division of this district, the cause was continued from that date. By another order entered on December 2, 1970, the cause was set for trial on December 14, 1970. On December 12, 1970, however, defendant filed herein his waiver of trial by jury and waiver of special findings of fact under Rule 23(c) of the Federal Rules of Criminal Procedure. Simultaneous-ly, the following stipulation of facts was filed, signed by counsel for plaintiff, by defendant and by counsel for defendant:

"Comes now the United States of America by Calvin K. Hamilton, First Assistant United States Attorney for the Western District of Missouri; defendant Angelo F. Bruno; and Kenneth K. Simon, attorney for defendant Angelo F. Bruno, and hereby agree and stipulate for the purposes of the trial of the above-captioned matter, that the facts set forth hereinafter in the numbered paragraphs hereof are true and the same are hereby submitted and received in evidence subject only to objections during the trial of this cause that such facts are irrelevant and immaterial:

"1. Angelo F. Bruno was born at Licata, Sicily, Italy on January 25, 1902.

"2. Angelo F. Bruno entered the United States on March 16, 1907, at New York, New York, accompanied by: (a) his mother, Margherita Cellura Bruno, age 27; (b) his sister, Angela Bruno, age 10; and (c) his brother Vincenzo (Charles), age 8; destined to his father, Salvatore Bruno, at Kansas City, Missouri.

"3. On December 12, 1907, Salvatore Bruno, father of Angelo F. Bruno, died. At the time of his death Salvatore Bruno was an alien.

"4. During the month of June, 1933, Angelo F. Bruno made an entry into the United States at Niagara Falls, New York. This entry occurred as he was returning from a visit to Canada.

"5. On July 10, 1934, Angelo F. Bruno was arrested at Kansas City, Missouri, on a charge of selling morphine, in violation of the Harrison and Jones-Miller Narcotics Acts.

"6. On October 24, 1934, Angelo F. Bruno entered a plea of guilty to a count of an indictment charging him with violating the Harrison and Jones-Miller Narcotics Acts, and was sentenced to a term of two years.

"7. On October 30, 1934, Angelo F. Bruno was received at the United States

Penitentiary, Leavenworth, Kansas, to serve the two-year sentence imposed on October 24, 1934.

"8.   On May 21, 1936, an immigration warrant of arrest was issued for Angelo F. Bruno by the United States Immigration and Naturalization Service, Kansas City, Missouri.

"9.   On May 22, 1936, a deportation hearing was held for Angelo F. Bruno at the United States Penitentiary Annex, Leavenworth, Kansas.

"10.   On June 1, 1936, Angelo F. Bruno was conditionally released from the United States Penitentiary Annex. He was taken into custody by the United States Immigration and Naturalization Service and lodged in the Jackson County jail, Kansas City, Missouri.

"11.   On June 5, 1936, Angelo F. Bruno was released on a $1,000 appearance bond by the United States Immigration and Naturalization Service at Kansas City, Missouri.

"12.   July 16, 1936, a warrant was issued directing the deportation of Angelo F. Bruno to Italy.

"13.   On September 24, 1936, Angelo F. Bruno filed a Petition for Writ of Habeas Corpus in the United States District Court for the Western District of Missouri.

"14.   On November 27, 1937, the Petition for Writ of Habeas Corpus filed by Angelo F. Bruno on September 24, 1936, was dismissed.

"15.   On December 5, 1936, Angelo F. Bruno failed to appear, as directed, at the office of the United States Immigration and Naturalization Service, Kansas City, Missouri, for deportation.

"16.   On April 19, 1937, the $1,000 appearance bond posted by or on behalf of Angelo F. Bruno on June 5, 1936, was forfeited by the United States Immigration and Naturalization Service at Kansas City, Missouri.

"17.   On April 23, 1943, Bruno was arrested at Detroit, Michigan, on the warrant issued July 16, 1936.

"18.   On April 28, 1943, Angelo F. Bruno was released on a $2,500 appearance bond by the United States Immigration and Naturalization Service at Detroit, Michigan.

"19.   On July 1, 1944, a motion filed by Angelo F. Bruno to reopen deportation proceedings to enable him to seek administrative relief under Section 19 (c) of the existing immigration law, was granted.   In this motion Bruno was actually seeking suspension of the deportation or permission for voluntary departure to Canada, so that he could seek an´immigrant visa for permanent residence in the United States with the guarantee to Canada that the United State would permit Angelo F. Bruno to re-enter the United States if he was not successful in getting an immigrant visa.

"20.   On August 30, 1944, Angelo F. Bruno registered as an alien under the Alien Registration Act of 1940.

"21.   On June 13, 1945, the warrant of deportation issued July 16, 1936, was withdrawn and Angelo F. Bruno was granted permission to voluntarily depart for Canada where he could apply for an immigrant visa for permanent residence in the United States.   Under the procedure then in effect the United States guaranteed Canada that it would permit Angelo F. Bruno to re-enter the United States if he was not successful in getting an immigrant visa.   After the withdrawal of the warrant of deportation issued on July 16, 1936, numerous extensions of the voluntary departure time were granted to Angelo F. Bruno.

"22.   On January 15, 1948, Angelo F. Bruno applied for admission to Canada (in accordance with the voluntary departure provisions) at Windsor, Ontario, Canada, but was refused entry. He then returned to the United States side of the border at Detroit, Michigan, picked up his own personal automobile, and drove through the Detroit-Windsor tunnel to the Ambassador bridge and entered Canada as a visitor.   Upon en-

tering Canada Angelo F. Bruno proceeded directly to the American Consulate in Windsor. While at the American Consulate he was arrested by Canadian immigration authorities on January 15, 1948.

"23. On January 15, 1948, Angelo F. Bruno was deported from Canada to the United States. Upon being readmitted to the United States he was lodged in the Wayne County jail, Detroit, Michigan, as a Canadian deportee by the United States Immigration and Naturalization Service.

"24. On January 19, 1948, Angelo F. Bruno was released on a $1,000 appearance bond by the United States Immigration and Naturalization Service at Detroit, Michigan.

"25. On April 19, 1948, the $2,500 appearance bond posted at Detroit, Michigan, on April 28, 1943, was canceled due to Bruno's departure from the United States and because of the new $1,000 appearance bond posted on January 19, 1948.

"26. On November 3, 1949, a deportation hearing was commenced at Detroit, Michigan. During this hearing Angelo F. Bruno renewed his application for suspension of deportation and he was granted additional time to secure evidence to support this application.

"27. On February 7, 1950, the deportation hearing commenced on November 3, 1949, was resumed and concluded.

"28. On February 19, 1954, because of the decision of the Supreme Court in the case of Wong Yang Sung v. McGrath, 339 U.S. 33 [70 S.Ct. 445, 94 L.Ed. 616] (1950), the hearing officer who conducted the deportation hearing which commenced on November 3, 1949, and was concluded on February 7, 1950, was disqualified. As a result of this disqualification new character investigations were made by the United States Immigration and Naturalization Service.

"29. On April 15, 1954, another deportation hearing was held.

"30. On July 12, 1954, a special inquiry officer of the United States Immigration and Naturalization Service denied Angelo F. Bruno's application for suspension of deportation and ordered Bruno deported to Italy.

"31. On March 5, 1955, the Board of Immigration Appeals, Washington, D. C., dismissed Angelo F. Bruno's appeal from the order of the special inquiry officer denying suspension of deportation and ordering Bruno deported to Italy.

"32. On March 15, 1955, a warrant for the deportation of Angelo F. Bruno was issued.

"33. On March 21, 1955, Angelo F. Bruno filed a petition for a Presidential pardon for the narcotics conviction of October 24, 1934.

"34. On April 15, 1955, the Immigration and Naturalization Service entered an order staying deportation of Angelo F. Bruno pending the decision on his petition for a Presidential pardon.

"35. On May 4, 1955, Angelo F. Bruno's petition for a Presidential pardon was denied.

"36. On May 17, 1959, (sic) Angelo F. Bruno surrendered himself to the United States Immigration and Naturalization Service at Kansas City, Missouri, on the warrant of deportation issued March 15, 1955. On the same date (May 17, 1955) Bruno filed a petition for Writ of Habeas Corpus in the United States District Court for the Western District of Missouri, and he was released from custody after posting a $1,000 appearance bond ordered by the United States District Court.

"37. On June 28, 1955, a hearing was held on Angelo F. Bruno's petition for a Writ of Habeas Corpus by the Honorable Charles E. Whitaker (sic). At the conclusion of the hearing Judge Whitaker (sic) granted Angelo F. Bruno thirty days in which to file a brief and the United States Immigration and Naturalization Service was given fifteen days from the date that Bruno's brief was filed to file a reply brief.

"38. On August 23, 1955, the petition for a Writ of Habeas Corpus filed by Angelo F. Bruno on May 17, 1955, was denied by Judge Whitaker (sic).

"39. On August 25, 1955, Angelo F. Bruno filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit from the order of August 23, 1955, denying his petition for a Writ of Habeas Corpus.

"40. On August 25, 1955, an order was entered staying deportation of Angelo F. Bruno pending the opinion of the United States Court of Appeals for the Eighth Circuit on his appeal filed August 25, 1955.

"41. On July 17, 1956, the United States Court of Appeals for the Eighth Circuit in the case of United States of America Ex Rel., Angelo F. Bruno v. James M. Sweet, Acting Officer in Charge, United States Immigration and Naturalization Service, Kansas City, Missouri, 235 F.2d 801, affirmed the order of August 23, 1955, dismissing Angelo F. Bruno's petition for Writ of Habeas Corpus.

"42. On August 13, 1956, Angelo F. Bruno failed to appear, as directed, at the office of the United States Immigration and Naturalization Service, Kansas City, Missouri, for deportation.

"43. On August 29, 1956, the $1,000 appearance bond posted May 17, 1955, was ordered forfeited.

"44. On December 5, 1956, Angelo F. Bruno was located at Houston, Texas, and taken into custody by officers of the United States Immigration and Naturalization Service.

"45. On December 10, 1956, at Houston, Texas, Angelo F. Bruno was deported from the United States. He was flown from Houston, Texas, in an aircraft owned and operated by the United States Immigration and Naturalization Service, to Nassau, Bahamas, where he was placed on a British Overseas Airways flight to Europe.

"46. On October 30, 1963, Angelo F. Bruno arrived at San Juan, Puerto Rico, as a passenger on the "Liana," a ship operating under the Italian flag. At that time he was traveling under the name of David Michael Barnes, a citizen of Great Britain, and had in his possession Great Britain Passport No. 84206. He was removed from the ship by United States Immigration and Naturalization Service officers and held in custody pending exclusion proceedings.

"47. On October 31, 1963, Angelo F. Bruno filed a petition for Writ of Habeas Corpus in the United States District Court of Puerto Rico contesting his detention in lieu of $10,000 bail, pending exclusion proceedings.

"48. On November 18, 1963, a grand jury sitting in the District of Puerto Rico returned an indictment in two counts charging Angelo F. Bruno with violation of 8 U.S.C. 1326, and 18 U.S.C. 1001.

"49. On November 18, 1963, Angelo F. Bruno was brought before the United States District Court for the District of Puerto Rico on a Writ of Habeas Corpus Ad Prosequendum for arraignment on the offenses charged in the indictment returned November 18, 1963. The United States District Court set bond on the criminal charges at $1,000.

"50. On November 20, 1963, Angelo F. Bruno posted a $1,000 appearance bond in the United States District Court and upon his release from the custody of the United States Marshal was taken into custody by officers of the United States Immigration and Naturalization Service, to be held pending the exclusion proceedings.

"51. On November 27, 1963, a hearing was held in the United States District Court for the District of Puerto Rico on the petition for Writ of Habeas Corpus filed October 31, 1963.

"52. On December 4, 1963, the petition for Writ of Habeas Corpus filed on October 31, 1963, was denied by the United States District Court.

"53. On January 15, 1964, Angelo F. Bruno was found not guilty in the United States District Court for the District of Puerto Rico of the offenses

charged in the two-count indictment returned November 18, 1963.

"54. On January 20, 1964, a special inquiry officer of the United States Immigration and Naturalization Service at San Juan, Puerto Rico, ordered Angelo F. Bruno excluded from Puerto Rico and deported to Italy.

"55. On January 25, 1964, Angelo F. Bruno was deported from San Juan, Puerto Rico, to Italy.

"56. On May 25, 1970, Angelo F. Bruno was found at 3232 Windsor, Kansas City, Missouri, by officers of the United States Immigration and Naturalization Service and was taken into custody by these officers for being in the United States unlawfully after having been deported.

"57. At no time after December 10, 1956, when he was deported from the United States, did Angelo F. Bruno obtain express consent from the Attorney General of the United States to permit him to reapply for admission to the United States."

Subsequently, on December 15, 1970, a supplemental stipulation of facts was filed signed by the same parties, to the following effect:

"Shortly before May 25, 1970, Angelo F. Bruno wilfully, knowingly and intentionally entered the United States from Canada at Niagara Falls, New York, and took a bus at Niagara Falls, New York, for Cleveland, Ohio."

A third supplemental stipulation filed on December 30, 1970, had attached to it the documents relative to defendant's contention that the conviction and sentence on which the 1956 order of deportation was based were invalid. The stipulation contained the agreement that the facts contained in the documents were true. The issue of the possible invalidity of the conviction and sentence

on which the 1956 deportation was based, however, which is currently pending adjudication on defendant's petition for writ of *coram nobis* in Bruno v. United States (W.D.Mo.) Civil Action No. 19319–3, is not material to the issue of defendant's guilt or innocence of the charge herein, as explained below.

■ From the foregoing, it is readily apparent that facts have been stipulated which are necessary to establish the guilt of defendant. The statute under which defendant has been charged, Section 1326, Title 8, United States Code, provides as follows:

"Any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both."

All the essential elements of the offense have been stipulated by the factual stipulations recited above on which the case has been submitted for decision. The facts stipulated conclusively show that defendant knowingly, wilfully and unlawfully [1] was found in the United

---

1. In Pena-Cabanillas v. United States (C.A. 9) 394 F.2d 785, it was held that it was not necessary for the Government to allege intent under Section 1326, Title 8, U.S.C., see also United States v. Trott (D.Md.) 227 F.Supp. 448, and that it was unnecessary to prove "specific intent" to establish a violation of this statute, and that "general intent" to do the act constituting the offense was sufficient. The stipulation in the case at bar, however, warrants a finding of both specific and general intent.

States on or about May 25, 1970, after having been deported in 1956.

Therefore, unless defendant has valid defenses, the Court must make a finding of guilty of the offense charged in the indictment.

Defendant has raised by motion the following defenses:

(1) this prosecution is barred by the statute of limitations

(2) defendant's 1956 deportation was based on an invalid conviction.

In support of the statute of limitations defense, defendant states as follows:

"1. That the Defendant did live openly in the United States from date of entry in 1907 to 1956; that he used his own name; registered for the draft during World War II at Detroit, Michigan under his true name; that he was regularly employed in Defense Industry with PUTNAM TOOL COMPANY from 1940 to 1948, and had Security Clerance (sic) from the United States government for defense work; that if the government desired to proceed criminally against this Defendant, said action only could be laid within the five year period following his entry in January 15, 1948 (See Par. 22 of Stipulation).

"2. Defendant further request (sic) that the Court consider all evidence taken before the Immigration Department in regard to the facts of his case, which Court deems said evidence appropriate.

"3. Defendant urges that all subsequent actions of the government in removing the Defendant from the country were illegal.

"4. Further that the Defendant will appear in person to present evidence on his personal history in this case."

The facts from the stipulation of facts and the supplemental stipulations of fact which are relevant to the limitations issue are as follows:

On March 15, 1955, a warrant for the deportation of Angelo F. Bruno was issued (Stip. para. 32). The execution of this warrant was stayed pending a decision of Bruno's petition for a Presidential Pardon (Stip. para. 34) and pending the opinion of the United States Court of Appeals for the Eighth Circuit on his appeal from the denial of a petition for writ of habeas corpus (Stip. para. 40). This warrant of deportation was executed on December 10, 1956, at Houston, Texas, and Bruno was deported from the United States on the same date (Stip. para. 45). Thereafter, Bruno re-entered the United States shortly before May 25, 1970 (Supp. Stip. para. 1) and on May 25, 1970, he was found at 3232 Windsor, Kansas City, Missouri, by officers of the United States Immigration and Naturalization Service and was taken into custody for being in the United States unlawfully after having been deported (Stip. para. 56). The indictment in the case at bar was returned on June 17, 1970. Insofar as defendant may be complaining of the delay between the issuance and the execution of the deportation warrant, the delay was not great and was at least partly occasioned by the defendant's challenging the validity of the deportation order in habeas corpus proceedings. See United States ex rel. Bruno v. Sweet (C.A.8) 235 F.2d 801. Delay in execution of the warrant caused by the defendant does not invalidate it for laches. See Marty v. Nagle (C.A.9) 44 F.2d 695, cert. dis. 283 U.S. 868, 51 S.Ct. 349, 75 L.Ed. 1471. Insofar as defendant may be complaining that he was not deported following the issuance of the deportation warrant on January 16, 1936, until December 10, 1956, this contention has already been decided adversely to defendant in the decision of the United States Court of Appeals in United States ex rel. Bruno v. Sweet, supra, 235 F.2d at 804, 805, wherein it was held as follows:

"Deportation some 22 years after the commission of the narcotics offense appears to be a rather drastic remedy

in the present case, particularly in the light of the fact that petitioner has lived in this country since 1907, and has a wife, children, and other relatives living here who are United States citizens. However, we are convinced that under the laws as they exist the deportation is warranted. It is not our privilege or duty to pass upon the wisdom of laws which are constitutionally enacted, nor may we substitute our judgment for that of the administrative officials entrusted by Congress with the enforcement of the laws."

Some of the contentions of the defendant are not only immaterial, they are also without merit. The question of limitations on the time after an offense in which an alien may be deported has long been settled by the United States Supreme Court in Lehmann v. United States ex rel. Carson, 353 U.S. 685, 77 S.Ct. 1022, 1 L.Ed.2d 1122, and Mulcahey v. Catalanotte, 353 U.S. 692, 77 S.Ct. 1025, 1 L.Ed.2d 1127. Those cases hold that the provisions of Section 1251, supra, may be applied retroactively to cause aliens to be deported under the 1952 act for offenses committed prior thereto, even when they would have been immune from deportation under the prior law. In *Mulcahey, supra,* the alien was deported some 28 years after a narcotics offense in 1925. The Supreme Court stated that:

"Section 241(a) (11) [of the Immigration and Nationality Act of 1952, Section 1251(a) (11), Title 8, United States Code] makes an alien deportable if he has 'at any time' been convicted of illicit traffic in narcotic drugs. And § 241(d) makes § 241(a) (11) applicable to all aliens covered thereby 'notwithstanding * * * that the facts * * * occurred prior to the date of the enactment of this Act.'" 353 U.S. at 694, 77 S.Ct. at 1027, 1 L.Ed.2d at 1129.

It is otherwise well recognized that the 1952 act does not contain any statute of limitations within which an alien must be deported, Petition of Moy Wing Yin (United States ex rel. Moy Wing Yin v. Murff) (S.D.N.Y.) 167 F.Supp. 828, 831; Evans v. Murff (D.Md.) 135 F. Supp. 907; United States ex rel. Vicchitto v. Martineau (D.Conn.) 27 F. Supp. 440, affirmed (C.A.2) 104 F.2d 1023, and that Acts of Congress governing deportation are not subject to the constitutional prohibition against the passage of ex post facto laws and may be retroactive. United States ex rel. Eichenlaub v. Shaughnessy, 338 U.S. 521, 529, 70 S.Ct. 329, 94 L.Ed. 307; Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549. Further, as stated above the legality of the deportation order is immaterial and is not an issue in this cause. In United States ex rel. Bartsch v. Watkins (C.A.2) 175 F.2d 245, and United States ex rel. Rubio v. Jordan (C.A.7) 190 F.2d 573, it was held that even if an earlier deportation is illegal, the deportee has no right to re-enter the United States without permission so long as the deportation order is in existence. In Arriaga-Ramirez v. United States (C.A.10) 325 F.2d 857, it was held that a deportation order could not be collaterally attacked as a defense in a criminal prosecution under Section 1326, Title 8, United States Code. In that case, at l. c. 859, the Court stated:

"Appellant further urges that as to the deportation of 1950, it is not sufficient to introduce the Warrant and to prove its execution. He urges that at least the deportation proceedings must also be shown. The trial court considered the proof of authority for deportation was sufficient as was the proof of actual deportation, and we agree. The steps leading to the deportations of appellant need not be proved as appellant here contends. The statute, 8 U.S.C. § 1326, requires only that it be shown that there was a previous 'deportation.' It has been held that a deportation cannot be collaterally attacked in a prosecution under 8 U.S.C. § 1326. United States ex rel. Rubio v. Jordan, 190 F.2d 573 (7th Cir.). United States ex rel.

Bartsch v. Watkins, 175 F.2d 245 (2d Cir.), held that it was not necessary to determine the validity of the prior deportation because, under any circumstances, the alien had no right to re-enter. These cases indicate that the proceedings are not reopened and need not again be established."

See also Pena-Cabanillas v. United States (C.A.9) 394 F.2d 785, 789, in which it is said: "The government [in a prosecution under Section 1326, *supra*] need only prove that the accused is an alien and that he illegally entered the United States after being deported according to law." In a criminal prosecution, some cases hold that the deportation order may be collaterally attacked "on at least two fundamental and limited grounds. * * * that there is no basis in fact for the Board's conclusion in respect to deportability * * * [and] that there is no warrant in law for its issuance." United States v. Bowles (C.A.3) 331 F.2d 742, 750. In United States v. Heikkinen (C.A.7) 221 F.2d 890, 893, it was held that, in cases in which collateral attack on the order of deportation as a defense in a criminal action may be permitted, Section 1252, Title 8, United States Code, "prescribes the requirements to be met and the rights to be accorded an alien as a basis for a valid deportation order." That case lists the following requirements from that statute:

"(1) the alien shall be given notice, reasonable under the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

"(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

"(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and

"(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial and probative evidence."

But defendant raises no defense based on any one or more of these requirements. Further, those issues were determined adversely to petitioner in United States ex rel. Bruno v. Sweet, *supra*, 235 F.2d at 802, wherein it was said:

"We shall not discuss the facts in detail as we believe that deportation upon the ground of petitioner's previous narcotics conviction is fully supported by law and the undisputed evidence."

Defendant seeks collaterally to attack the deportation order on the grounds that the conviction on which it was based is invalid because his guilty plea was involuntary. But the determination of this issue is not to be made by this Court on review of the deportation hearings. In United States v. Heikkinen (C.A.7) 221 F.2d 890, *supra*, it was held that, while validity of the order of deportation is "an inescapable ingredient of the statutory offense with which defendant is charged" and is "put squarely in issue by defendant's motion to dismiss the indictment," the court trying the accused on a violation of § 1326, *supra*, cannot accord a *"de novo* hearing on the merits underlying this order of deportation." 221 F.2d 892, 893. The inquiry, rather, is limited:

"to have the trial judge ascertain whether he was accorded due process before the Immigration and Naturalization Authorities; whether the Rules embodied in the Regulations of the Immigration and Naturalization Service were adhered to and pertinent statutory provisions duly followed * * *" *Id.*

The question of whether the conviction underlying the order of deportation was in fact valid thus does not constitute a question which is reviewable in this Court on the prosecution under § 1326,

*supra.*[2] The situation is analogous to escape from imprisonment under a sentence which is later invalidated. In those cases, it is held that the later invalidation of the sentence and underlying conviction is of "no legal consequence" because "At the time of his escape, the defendant was a federal prisoner in custody by virtue of process issued under the laws of the United States within the meaning of Sec. 751, Title 18, U.S.C.A." Godwin v. United States (C.A.8) 185 F.2d 411, 413. See also Derengowski v. United States (C.A.8) 404 F.2d 778, and cases therein cited; Laws v. United States (C.A.10) 386 F.2d 816; Crawford v. Taylor (C.A.10) 290 F.2d 197; Bayless v. United States (C.A.9) 141 F.2d 578, 580, in which it was said:

> "The statute * * * forbids escape, not only to those 'properly in the custody of the Attorney General' but also to all 'who are confined in any penal or correctional institution, pursuant to his direction,' without mention of the propriety of the confinement."

Similarly, Section 1326 of Title 8, United States Code, proscribes a deported alien's later being found in the United States, without any mention of the propriety of the deportation, unless it is with the consent of the Attorney General. The alleged invalidity of the underlying conviction thus cannot provide a defense to the violation of Section 1326, *supra*, which is charged in the case at bar.

▆▆▆▆▆ Insofar as defendant, by raising the limitations issue, may be objecting that the indictment in this cause has been returned beyond a permissible time after the commission of the offense, the contention is without merit. The offense described in the statute was committed on May 25, 1970, when, according to the above stipulation, defendant was found at 3232 Windsor, Kansas City, Missouri, by officers of the United States Immigration and Naturalization Service and was taken into custody by those officers for being in the United States unlawfully after having been deported. The applicable statute of limitations, Section 3282, Title 18, United States Code, provides as follows:

> "Except as otherwise expressly provided by law, no persons shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

Under this statute, it has been held that, under Section 1326, Title 8, United States Code, making it a crime to be found in the United States after having been excluded and deported, the criminal conduct continued and this statute of limitations did not run so long as the alien was present in the United States. United States v. Alvarado-Soto (S.D.Cal.) 120 F.Supp. 848. Clearly, the provisions of that statute are met by the facts which have been stipulated in the case at bar. Under the provisions of Section 1326, Title 8, United States Code, the time of the commission of the offense is when the defendant is "found" unlawfully in the United States.

Defendant also moves to dismiss for the following reasons:

> "1. That the within prosecution is bottomed upon the alleged commission of a felony in October 24, 1934 in case No. 12,637–1 in which Defendant entered a plea of guilty to the charge of

---

2. The question of whether the trying court can review the validity of the order of deportation in any respect is a question which has been left open by the Supreme Court of the United States in United States v. Spector, 343 U.S. 169, 72 S.Ct. 591, 96 L.Ed. 863, in which it is said that:
"It is [urged] that the statute must be declared unconstitutional because it af-
fords a defendant no opportunity to have the court which tries him pass on the validity of the order of deportation. That question was neither raised by the appellee nor briefed nor argued here. If it had been, we might consider it." 343 U.S. at 172, 72 S.Ct. at 593, 96 L.Ed. at 867.

possession of (sic) marijuana (actually morphine hydrochloride).

"2. That the Defendant at the time of the making of the plea aforesaid was not informed of his rights under the Constitution of the United States, nor of the consequences of a plea, that he was not offorded an opportunity to speak in his own behalf, that he was denied effective assistance of counsel in the making of said plea in that he was not fully advised of his rights and the consequences of entering a plea of guilty, that the Court at the time of sentencing did not fully advise the Defendant of the consequences of a plea of guilty, Defendant did not have an attorney present and the Court did not assure itself that the Defendant was aware of the full consequences of entering a plea of guilty as required by United States Constitution, Rules 32, 35, and 11, Federal Criminal Rules.

"3. That this matter hᵢ been made the subject of a pending Motion under Rule 35 filed December 22, 1970, before the sentencing Court but that the proceedings in cause 12,637–1 as aforesaid are vitiated and the judgment, sentence and conviction therein void and of no force and effect, and no criminal act could then be predicated upon the results of this original criminal case 12,637–1."

■ The invalidity of the 1934 conviction cannot provide a defense in the case at bar. Arriaga-Ramirez v. United States, *supra,* 325 F.2d at page 859; United States ex rel. Bartsch v. Watkins, *supra*; United States ex rel. Rubio v. Jordan, *supra.*

For the foregoing reasons, it is

Adjudged that defendant be, and he is hereby, guilty as charged in the indictment herein of violating Section 1326, Title 8, United States Code, by being found in the United States on or about May 25, 1970, after having been deported in 1956.

A presentence investigation is requested.

## SUPPLEMENTAL MEMORANDUM

On May 4, 1971, this Court entered its "memorandum findings of fact, conclusions of law and judgment of conviction of defendant" of violating Section 1326, Title 8, United States Code, by being found in the United States on or about May 25, 1970, after having been deported. In that judgment, it was held that defendant could not raise collaterally as a defense in this action the contention of the invalidity of the 1934 narcotics conviction on which the deportation order was based.

■ Thereafter, on May 14, 1971, this Court received advance sheet no. 4 of 438 F.2d in which was contained the report of the case of Cruz-Sanchez v. Immigration and Naturalization Service (C.A.7) 438 F.2d 1087. That case involved a petition to review a deportation order based upon a narcotics conviction. The Court enunciated the principle that "The conviction may not be attacked in the deportation proceeding itself," 438 F.2d at 1089, but remanded the case to the Immigration and Naturalization Service for further consideration when it was advised that the narcotics conviction had been vacated.

The decision in Cruz-Sanchez v. Immigration and Naturalization Service, *supra,* does not affect the rule that the validity of the conviction underlying a deportation order cannot be of concern in a subsequent prosecution for reentering the United States in violation of the deportation order.

Defendant's *coram nobis* petition to vacate the sentence and conviction imposed on the narcotics offense in 1934 in United States v. Bruno (W.D.Mo.) Criminal Action No. 12637–1, is still pending in this Court. Bruno v. United States (W.D.Mo.) Civil Action No. 19319–3. An adjourned hearing will soon be held in that case. If the outcome is favorable to defendant and his conviction and sentence are vacated, he may then apply to the Immigration and Naturalization

Service for appropriate relief. The vacation of the conviction and sentence in that case, however, if done, cannot affect the conviction in the case at bar.