**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**WONG KIM BO, a/k/a Yee Kuk Ho, etc.,**
**Defendant-Appellant.**

No. 71-1928.

United States Court of Appeals,
Fifth Circuit.

Dec. 18, 1972.

Anthony S. Battaglia, Howard P. Ross, St. Petersburg, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., William M. James, Jr., Claude H. Tison, Jr., Asst. U. S. Attys., Tampa, Fla., for plaintiff-appellee.

ON PETITION FOR REHEARING

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

PER CURIAM:

By Petition for Rehearing the government strenuously urges that the original opinion in this case, 466 F.2d 1298, was in error in imputing such critical importance to the words "arrested and" in 8 U.S.C.A. § 1326. "The simple, and correct, answer," the government suggests, " * * * is that the term 'arrested and' in the statute is now meaningless. * * * It is, indeed, surplusage." Petition for Rehearing at page 9.

To support this curious assertion, the government argues three points. First, it is pointed out that previous decisions have virtually ignored the "arrested and" language of the statute and concentrated on the "deportation" terminology. Undeniably this is so, but the argument is of no moment. The mere fact that, as the government concedes, no previous Court has been confronted with the precise argument raised in this appeal certainly cannot prevent this Court from considering this

question of first impression and interpreting the statute involved.

More importantly, the cases cited by the government are either readily distinguishable or not in point. In the *Mrvica* case,[1] for example, the issue of "arrest" was never even mentioned, let alone decided. Moreover, a Warrant for the Arrest of Mrvica was apparently issued on September 4, 1942 (see dissenting opinion of Justice Goldberg, 376 U.S. at 569, 84 S.Ct. at 838, 11 L.Ed.2d at 917) and executed by the INS before the alien's re-entry (see 376 U.S. at 564, 84 S.Ct. at 836, 11 L.Ed.2d at 914).

■ *Mrvica* involved a civil deportation proceeding. Much more latitude is tolerable in a civil deportation case than in a criminal prosecution such as the case at bar in which the criminal statute must be *strictly* construed.

The *Bruno*[2] case on which the government relies is similarly inapposite. Bruno was arrested *after* his order of deportation and pursuant to a Warrant on April 23, 1943. See 328 F.Supp. 818. And the *Cabanillas*[3] case cited by the government only reinforces the decision rendered here. Although the "arrest" issue was not presented in that case, certain rules of statutory construction enunciated there are useful in the case at bar:

> In construing statutes, words are to be given their natural, plain, ordinary and commonly understood meaning unless it is clear that some other meaning was intended, Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); and where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded. City of Burbank v. General Electric Company, 329 F.2d 825 (9 Cir. 1964). 394 F.2d at 789.

■ By the same reasoning, words in statutes should not be discarded as "meaningless" and "surplusage" when Congress specifically and expressly included them, particularly where the words are excluded in other sections of the same act. Compare 8 U.S.C.A. § 1326 with 8 U.S.C.A. § 1101(g). But the Court in *Cabanillas* went further:

> The Immigration and Nationality Act represents the final product of a most intensive and searching investigation and study over a three year period. See 1952 U.S.Code Cong. and Adm.News, p. 1678. It would be absurd for this court to think that Congress inadvertently left "intent" out of Section 1326. 394 F.2d at 790.

It would be similarly absurd for this Court to think that Congress left the words "arrest and" *in* Section 1326 inadvertently.

■ ■ Secondly, the government argues that since it is not required to show specific intent[4] in a § 1326 prosecution, it should not be required to show notice in the form of an arrest. Again the argument overlooks the point that Congress expressly made "arrest and" an element of the criminal offense, albeit while purposely excluding specific intent from this section of the criminal statute. Moreover, where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. The fact that Congress specifically included any reference to specific intent simply suggests the obvious—that Congress intended "arrest" to be an element of the criminal offense but did not choose for "specific intent" to be so.

1. Mrvica v. Esperdy, 1964, 376 U.S. 560, 84 S.Ct. 833, 11 L.Ed.2d 911.

2. United States v. Bruno, W.D.Mo., 1971, 328 F.Supp. 815.

3. Pena-Cabanillas v. United States, 9 Cir., 1968, 394 F.2d 785.

4. Arriaga-Ramirez v. United States, 10 Cir., 1963, 325 F.2d 857; United States v. Maisel, 3 Cir., 1950, 183 F.2d 724; Corsetti v. McGrath, 9 Cir., 1940, 112 F.2d 719; Cabanillas, *supra*.

In its final point the government points out that changes in INS procedures have rendered the "arrested and" language anachronistic. It is undisputed that prior to 1956 a physical arrest of an alien was a jurisdictional prerequisite to a deportation proceeding. In 1956, however, the Show Cause Order procedure [5] came into existence (by administrative action, not statutory amendments) and the "arrest" was no longer required to institute deportation proceedings. The continued presence of the "arrested and" language in the statute is explained by the simple fact that Congress has never amended the Immigration and Nationality Act since that time.

 While it is true that the Show Cause Order procedure might persuade Congress to delete or modify the "arrested and" wording of the criminal statute, it is equally true that the statute has not been changed yet. "Arrest" is still an element of the offense, unless and until Congress amends the law. Faced with that reality, our task becomes one of determining what "arrest" the statute contemplates. The fact that, as the government urges, the pre-show cause order arrest which was in less enlightened days a jurisdictional requisite to the validity of deportation proceedings is no longer practiced does not change the statute. We adhere to the position stated in our original opinion for the reasons there stated that "there is simply no logical nexus between a pre-hearing arrest and the criminality of a subsequent illegal reentry," 466 F. 2d at p. 1305 but that the § 243.2 post-hearing "arrest" furthers the Congressional objective of the Act.

Our decision should not discourage the humane approach which has heretofore typified immigration proceedings. For our decision really changes nothing. What and all that is required is that the INS abide by its own mandatory regulations. Specifically, before criminal sanctions can be imposed for re-entry after arrest and deportation, it must be shown that the INS followed 8 C.F.R. § 243.1 and issued a Warrant of Deportation. That is sufficient restraint on liberty to constitute an "arrest," even without custodial manhandling and physical restraint, as we explained in our original opinion.

The Petition for Rehearing is

Denied.

---

5. See 8 C.F.R. § 242.1 which was adopted by 22 Fed.Reg. 9796, December 6, 1957.